**MEAD JOHNSON & COMPANY and Bristol–myers Squibb Company, Plaintiffs,**

v.

**BARR LABORATORIES, INC., Defendant.**

**No. 97 CIV. 6317 JES.**

United States District Court, S.D. New York.

March 5, 1999.

Fitzpatrick, Cella, Harper & Scinto, New York, NY, Errol B. Taylor, Lee A. Goldberg, of Counsel, for Plaintiffs.

Bryan Cave LLP, New York, NY, Philippe Bennett, of Counsel, for Defendant.

Winston & Strawn, Washington, D.C., Charles B. Molster III, Michael K. Atkinson, of Counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Mead Johnson & Company and Bristol–Myers Squibb Company (collectively "Mead Johnson") bring the instant action for patent infringement against defendant Barr Laboratories, Inc. ("Barr"), alleging that Barr has infringed U.S. Patent No. 4,258,027 (the " '027 patent") by submitting Abbreviated New Drug Application ("ANDA") No. 71–196 with the U.S. Food and Drug Administration ("FDA"). Mead Johnson seeks declaratory and injunctive relief and its costs and attorney fees incurred in the prosecution of the instant action. Barr also seeks a declaration of noninfringement and its costs and attorney fees. Following a hearing on claim construction and a trial of infringement to the Court, the Court finds that Barr has infringed the '027 patent and grants Mead Johnson declaratory and injunctive relief. The Court denies the parties' cross-motions for costs and attorney fees. The following constitutes the Court's findings of fact and conclusions of law.

## BACKGROUND

### The Parties

Plaintiff Mead Johnson & Company is the owner, through assignment, of the '027 patent, which issued on March 24, 1981, and is to expire on March 26, 1999. Mead Johnson & Company is a wholly-owned subsidiary of plaintiff Bristol–Myers Squibb Company ("Bristol"). Bristol is the holder of approved New Drug Application No. 18–207 for trazodone hydrochloride. Apothecon, a division of Bristol, sells trazodone hydrochloride 150 mg and 300 mg tablets under the trademark Desyrel ® Dividose ™ Tablets. Desyrel ™ Dividose ® Tablets practice the tablet structure taught by the '027 patent.

Barr is a manufacturer and distributor of generic prescription drugs. Barr has filed ANDA No. 71–196 with the FDA to obtain approval to manufacture and dis-

tribute generic trazodone tablets in competition with Mead Johnson.

**The Patent in Suit**

The '027 patent issued upon an application for letters patent filed in the names of Michael K. Ullman, Stephen T. David and Claude E. Gallian for an invention entitled "Multi–Fractionable Tablet Structure." The '027 patent describes certain scored tablet dosage forms that are fractionable into multiple subdosages. The invention allows convenient patient modification of dosage by facilitating the fragmenting of the tablet into at least equal bisectional or equal trisectional dosages through an arrangement of multiple scorings on the surface of the tablet. The object of the '027 patent is

> to provide a multi-fractionable tablet structure prepared in a unitary dosage amount and having score markings disposed selectively such that ... the unitary dosage tablet may be readily and conveniently fractured into at least either bisectional or trisectional dosage units as desired for patient consumption.

'027 patent, col. 2, lns. 53–66.

Claim 1 of the '027 patent is the only claim at issue in this litigation. Claim 1 reads as follows:

> A tablet structure which comprises a unitary body having oppositely disposed first and second substantially horizontal surfaces being joined respectively by substantially vertical walls; any of said first horizontal surface, or said second horizontal surface, or said substantially vertical walls containing at least two transverse score markings and at least one other of said surfaces or walls containing a single transverse score marking whereby the unitary body may be fractured into at least equal bisectional or equal trisectional units for consumption.

The Court held a *Markman* hearing on the construction of claim 1 on April 23, 1998. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Prior to the hearing, the parties stipulated to the construction of the claim language as follows:

- A "tablet structure" means "a tablet."

- A "unitary body" means "a unit dose which can be ingested whole."

- The phrase "having oppositely disposed first and second substantially horizontal surfaces being joined respectively by substantially vertical walls" means "the top and bottom (non-side) surfaces and the surfaces that join the top and bottom surfaces."

- The phrase "at least two transverse score markings" in the phrase "any one of said first horizontal surface, or said second horizontal surface, or substantially vertical walls containing at least two transverse score markings" means "two or more notches, lines, grooves or scratches that run continuously and uninterrupted on the same surface from edge to edge."

*See* Transcript of Oral Argument, April 23, 1998 ("*Markman* Hearing") at 24–25.

At the hearing, the parties contested the construction of the limitation "and at least one other of said surfaces or walls containing a single transverse score marking" and the limitation "whereby the unitary body may be fractured into at least equal bisectional or equal trisectional units for consumption." *See Markman* Hearing at 26, 70. The Court held at the conclusion of the hearing that the first limitation in dispute requires that one and only one score marking be disposed on at least one surface of the tablet. *See id.* at 44–52. The Court further held that the second limitation in dispute requires that at least one score marking be so disposed as to facilitate the fracturing of the tablet into equal bisectional units for consumption and that at least two score markings be so disposed as to facilitate the fracturing of the tablet into equal trisectional units for consumption. *See id.* at 74.

### Barr's Alleged Infringement

Mead Johnson's claim of infringement arises in the context of the FDA regulatory framework for the approval of generic drugs under the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. 98–417, 98 Stat. 1585 (1984). Before a new drug may be marketed in the United States, the FDA must approve a New Drug Application ("NDA") submitted by the manufacturer. *See* 21 U.S.C. § 355(a). The FDA publishes a list of each drug approved for safety and effectiveness in a publication entitled "Approved Drug Products With Therapeutic Equivalence Evaluations," commonly known as the "Orange Book." *See* 21 U.S.C. § 355(j)(7). A generic drug manufacturer seeking FDA approval for a generic version of a drug already listed in the Orange Book may file an Abbreviated New Drug Application ("ANDA") in order to shorten the time and effort required for approval. *See* 21 U.S.C. § 355(j)(2).

When a manufacturer files a NDA, the manufacturer must file with the application information relating to any patents that claim the drug or a method of using the drug. *See* 21 U.S.C. § 355(b)(1). When a generic manufacturer files an ANDA, the generic manufacturer must address whether the generic drug will infringe any such unexpired patent and whether such patent is valid in a formal statement referred to as "a paragraph IV certification." *See* 21 U.S.C. § 355(j)(2)(A)(vii). The ANDA applicant must also give notice to the patent owner and holder of the NDA. *See* 21 U.S.C. § 355(j)(2)(B)(I). The filing of a paragraph IV certification in support of an ANDA is actionable as an act of infringement under the patent laws. *See* 35 U.S.C. § 271(e)(2)(A).

Since 1987, Barr has been approved by the FDA to sell generic trazodone hydrochloride tablets that are not scored for fracturing into halves and thirds. On June 24, 1997, Barr filed a supplemental ANDA directed to the tablet design at issue in this litigation. The supplemental ANDA sought approval of a generic version of Mead Johnson's Desyrel ® Dividose ® to be sold in tablets with score markings to facilitate fracturing of the tablets into equal trisectional or equal bisectional units. Barr included a paragraph IV certification stating that its tablets would not infringe the '027 patent and provided notice to Mead Johnson of its application. Thereafter, Mead Johnson commenced the instant action pursuant to 35 U.S.C. § 271(e)(2)(A), alleging that Barr's tablets as disclosed in the ANDA infringe the '027 patent.

### DISCUSSION

The Court having previously ruled upon the contested issues of claim construction, and Barr having failed to claim that the patent in suit is invalid, the sole issue before the Court is whether Barr's tablet design infringes claim 1 of the '027 patent. Although claim construction is an issue of law, infringement, whether literally or by a substantial equivalent, is a question of fact. *See General Mills, Inc. v. Hunt–Wesson, Inc.*, 103 F.3d 978, 981 (Fed.Cir.1997).

Mead Johnson concedes that Barr does not literally infringe; rather, the issue before the Court is whether the Barr tablet infringes under the doctrine of equivalents. To determine whether the Barr tablet infringes, the Court must compare the accused product to the language of claim 1 of the '027 patent, the only claim asserted by Mead Johnson against Barr, focusing upon the actual language of the claim rather than Mead Johnson's commercial embodiment. *Zenith Laboratories, Inc. v. Bristol–Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed.Cir.1994). The doctrine of equivalents permits a finding of infringement when the accused product varies only slightly from the literal words of the patent claim, thus protecting the inventor from infringers who attempt to evade liability for copying the invention by making minor changes. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608,

70 S.Ct. 854, 94 L.Ed. 1097 (1950). A product that "performs substantially the same function in substantially the same way to obtain the same result" as the invention will be found to infringe under the doctrine of equivalents. *Id.; see also Hilton Davis Chem. Co. v. Warner–Jenkinson Co., Inc.,* 62 F.3d 1512, 1518 (Fed. Cir.1995) (*en banc*), *rev'd on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The doctrine of equivalents, however, is not an invitation to the Court to eliminate particular limitations provided by the language of the patent claim. *See Warner–Jenkinson,* 62 F.3d at 1528–29. Rather, following the "all elements rule," the Court must apply the doctrine of equivalents analysis on an element-by-element basis, finding infringement only where an accused product embodies either literally or by substantial equivalence each limitation of the claim. *Id.* As recently stated by the Supreme Court, the doctrine of equivalents requires the Court to determine whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson,* 117 S.Ct. at 1054.

As noted above, the Barr tablets are designed to facilitate fracturing of the tablet by the patient into equal bisectional or equal trisectional dosage units. The Barr tablets feature surface scoring bisecting and trisecting the tablets. Barr does not dispute that both its tablets and claim 1 of the '027 patent are directed to the same result—a unitary dosage tablet that may be broken into equal bisectional or trisectional dosage units by the patient. In addition, Barr has admitted that its tablets embody most of the limitations of claim 1 of the '027 patent. The only asserted distinguishing features of the Barr tablet are (1) that the Barr tablet has two pairs of opposing score notches instead of the claimed transverse score marks to facilitate fractioning the tablet into trisectional units and (2) that the Barr tablet has score markings on only one surface of the tablet,

whereas the '027 patent claims score markings on at least two tablet surfaces. The Court addresses each of these distinguishing features in turn.

### Barr's Opposing Score Notches

■ Barr's tablet design features a single transverse score marking that bisects the tablet and two pairs of opposing score notches that trisect the tablet. The score marking and notches appear upon a single surface of the tablet. The score marking runs uninterrupted from one outer edge of the tablet's surface to the other. Each pair of opposing notches forms in effect an interrupted or nontransverse score line.

The testimony at trial established that there is no substantial difference between Barr's opposing score notches and the '027 patent's transverse score markings. Both facilitate the fracturing of the tablet by the patient into equal trisectional dosages through the application of a vertical force placed on the scored surface of the tablet. Both the Barr tablet's notches and the '027 patent's score markings achieve this result by directing or focusing the pressure applied by the patient to effect a more uniform fracturing of the tablet than could be achieved without scoring. The testimony further established that transverse score markings and opposing score notches are commonly recognized by those of ordinary skill in the art as alternative ways to score tablets. Although the testimony of Barr's expert witness did establish that transverse score markings are more effective than score notches in facilitating uniform fracturing, the Court finds this testimony insufficient to distinguish the Barr score notches from score marks taught by claim 1. Where its accused product performs the same function by the same means to obtain the same result, Barr cannot avoid liability for infringement only because its product is less efficient in achieving that result. *See Insituform Technologies, Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 693 (Fed. Cir.1998).

The Court therefore finds that the Barr trisecting score notches and the '027 patent's transverse trisecting score lines "perform substantially the same function in substantially the same way to obtain the same result" and that these elements are thus substantial equivalents. *Graver Tank*, 339 U.S. at 608, 70 S.Ct. 854.

## The Disposition of Barr's Score Notches and Transverse Score Marking

Barr also distinguishes its tablet design from claim 1 of the '027 patent because claim 1, as construed by this Court, requires that a single transverse score marking appear on one surface of the tablet. Mead Johnson concedes that, because all the score markings on the Barr tablet are disposed on a single surface of the tablet, this limitation does not literally read upon the Barr tablet. However, Mead Johnson argues that the disposition of the score markings upon a single surface of the Barr tablet is the substantial equivalent of the disposition of score markings upon at least two surfaces taught by the '027 patent.

Barr responds to Mead Johnson's contention by raising the "all elements" rule, which, as noted above, requires that an accused product meet either literally or by substantial equivalence each element, or limitation, of the patent claim. *See Warner–Jenkinson*, 62 F.3d at 1528–29. Barr argues that one element of claim 1 that its accused product must satisfy under the all elements rule is the disposition of score markings upon at least two pill surfaces. Because its tablets are scored on only one surface, Barr argues that Mead Johnson cannot satisfy the all elements rule and cannot prove infringement under the doctrine of equivalents.

■ Barr's argument, however, misconstrues the all elements rule and expands that rule to an extent that would make infringement by equivalence impossible in any case. The all elements rule clearly does not require, as Barr suggests, that an accused product literally infringe each element of the patent claim. Rather, the patent owner may prove infringement by showing with respect to each element either (1) that the accused product literally infringes that element or (2) that the accused product incorporates the substantial equivalent of that element. In the instant action, Mead Johnson has demonstrated that the Barr tablet's score markings disposed on a single surface are the substantial equivalent of score markings disposed on multiple surfaces as taught by the '027 patent.

The substantial equivalence between the scoring of the Barr tablet and the scoring claimed by claim 1 of the '027 patent is demonstrated by a consideration of how both are fractured by the patient. The scoring on the Barr tablet allows the tablet to be fractured through the application of vertical force on the score markings. The vertical force is directed from the scored surface, or top, of the tablet to the opposite, or bottom, surface of the tablet. Similarly, the scoring disposition claimed by the '027 patent also calls for vertical force to be applied to the tablet along the same planes as the Barr tablet.

■ The Court recognizes one possible difference between the manner in which the Barr tablets are broken and the manner in which the tablets taught by claim 1 are broken. Because the Barr tablets are scored only upon a single surface, the patient will always apply vertical pressure to the scored surface, or top, to fracture the tablet. Because claim 1 of the '027 patent teaches disposition of the score markings on multiple surfaces of the tablet, the patient fracturing such a tablet might apply vertical pressure to one surface to fracture the tablet into bisectional units and apply vertical pressure to the opposite surface to fracture the tablet into trisectional units. The vertical planes across which pressure is applied do not vary with the disposition of the score markings across one or multiple surfaces. Only the surface to which such pressure is applied changes. Furthermore, when the trisect score markings are disposed on the tablet surfaces adja-

cent to, rather than opposing, the tablet surface bearing the bisect score marking, as depicted in figures K–M of the '027 patent and as is clearly allowed by the claim language, the patient may fracture the tablet by applying vertical pressure to either the surface bearing the bisect score marking or the opposite surface. With such a scoring disposition, a patient could easily fracture the tablet in exactly the same manner as the patient would fracture the Barr tablets—applying vertical pressure to the same surface of the tablet to fracture the tablet into trisectional units or bisectional units.

Barr has presented no evidence from which the Court could conclude that the disposition of score markings upon a single surface of a tablet is substantially different from the disposition upon multiple surfaces as taught by claim 1 of the '027 patent, whether as to the tablet's function, the way the patient fractures the tablet, or the result achieved. The only difference that Barr has demonstrated between its scoring disposition and the disposition taught by claim 1 is that the patient may be able to fracture the latter by applying pressure to either of at least two surfaces. There is no evidence before the Court, however, that this difference is in any way significant in the manufacture, distribution, or consumption of tablets. In the absence of such evidence, the Court finds that this single difference is too insubstantial to protect Barr from liability for infringement under the doctrine of equivalents.

**Barr's Assertion of Prosecution History Estoppel**

Barr also argues that application of the doctrine of equivalents in this case is limited by the countervailing doctrine of prosecution history estoppel. The doctrine of prosecution history estoppel prevents the patentee from recovering by the doctrine of equivalents subject matter previously conceded by the patentee during prosecution of the patent application to be outside the scope of the claim language. *Wang Labs., Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577 (Fed. Cir.1997). Whether prosecution history estoppel applies in a particular case is an issue of law. *Spectrum International, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed.Cir.1998). A patentee will be held to have surrendered subject matter where "one of ordinary skill in the art would objectively conclude from the prosecution history that an applicant surrendered it." *Litton Systems, Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1462 (Fed.Cir.1998).

Alleged infringers will frequently assert that the patentee surrendered subject matter by amending the claim language during prosecution in response to objections raised by the patent examiner. In this case, however, Barr focuses upon a statement made by the patentee in an Information Disclosure Statement ("IDS") unrelated to any amendment of the claims or any objection raised by the patent examiner.[1] An IDS can be the basis for an estoppel. *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303–1304 (Fed.Cir.1997). However, where an estoppel is alleged to arise from a statement made during prosecution unrelated to any amendment to the claim language, the statement at issue must "evince a clear and unmistakable surrender of subject matter." *Litton Systems*, 140 F.3d at 1458.

During prosecution of the '027 patent, Mead Johnson filed an IDS on April 22, 1980, in which Mead Johnson disclosed nineteen prior art references. Mead Johnson distinguished these references from the invention with a single sentence:

None of these references is believed to be pertinent to the present invention since there is no disclosure in any of them of a tablet containing two trans-

---

1. An Information Disclosure Statement is a document filed with the United States Patent and Trademark Office during the pendency of a patent application to furnish the patent examiner with patents, publications, or other information that the patent applicant believes the examiner should consider. *See* 37 C.F.R. §§ 1.97 and 1.98.

verse score markings on one surface and one transverse score marking on a different surface to facilitate fracture of the tablet into at least equal bisectional or equal trisectional units.

Ex. 2, at 21–22. Barr argues that this sentence clearly and unmistakably evinces Mead Johnson's intent to limit the scope of its patent to tablets "containing two transverse score markings on one surface and one transverse score marking on a different surface" and to surrender coverage of any tablet with score markings on a single surface. Barr offers no evidence that, in the absence of this statement, the patent examiner would have required Mead Johnson to amend the claims or that Mead Johnson attempted to distinguish the references in response to any objection raised by the patent examiner. Nor does Barr point to any other statement in the prosecution history by Mead Johnson or by the examiner that suggests that either the patentee or the examiner considered tablets scored upon a single surface to be outside the scope of the claims.

At trial, Mead Johnson's expert witness offered uncontroverted testimony that a person skilled in the art would not conclude from the prosecution history that the patentee surrendered as outside the scope of the claims all tablets scored upon a single surface. However, as the expert's conclusory testimony upon this question could reasonably be interpreted as offering an opinion on an issue of law properly within the province of the Court, the Court is reluctant to rely upon this testimony as the basis for its decision. Rather, based upon the Court's independent review of the portions of the prosecution history included in the Record, the Court concludes that Barr has failed to demonstrate a clear and unequivocal surrender by Mead John-

son of subject matter. The single sentence upon which Barr relies is simply too ambiguous for the Court to find that Mead Johnson relinquished during the patent prosecution all tablets scored upon a single surface. The Court therefore rejects Barr's argument that prosecution history estoppel precludes a finding of infringement in this action.[2]

### Barr's Assertion of the Prior Art

■ Barr also asserts a second argument why its tablets should not be found to infringe. Barr correctly argues that, even where an accused product is found to be the substantial equivalent of the claimed invention, public policy dictates that there can be no infringement if the asserted scope of equivalency would encompass the prior art. *See Wilson Sporting Goods Co. v. David Geoffrey & Assoc.,* 904 F.2d 677, 683–84 (Fed.Cir.1990). Whether the range of equivalents asserted by the patentee encompasses the prior art is an issue of law. *Id.*

Barr argues that scoring on multiple tablet surfaces is a necessary limitation on the scope of the '027 patent because the prior art included tablets with scoring on a single tablet surface. If the Court includes within the range of equivalents tablets with scoring on only one surface, then Barr claims that this range of equivalency will encompass the prior art.

Specifically, Barr focuses upon a single prior art patent that it claims to practice with its tablet design. This patent—Zellers, United States Patent No. 2,052,376—claims a tablet for delivering worm medication to the gizzards of poultry. Zellers does disclose a tablet scoring configuration in which score lines are disposed upon a single surface of the tablet. The Zellers patent does not, however, disclose any dis-

---

**2.** The Court notes its prior reliance upon this statement from the prosecution history in construing the language of claim 1. *See Markman* Hearing at 49–52. The Court's reliance upon the prosecution history for guidance in construing the patent claim, while finding the prosecution history insufficient to give rise to

an estoppel, is consistent with the well-recognized distinction between the use of prosecution history in these two very different contexts. *See Spectrum International, Inc. v. Sterilite Corp.,* 164 F.3d 1372, 1378 n. 2 (Fed. Cir.1998); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870–71 (Fed.Cir.1985).

position of score markings that bisect and trisect the tablet to facilitate fracturing of the tablet into equal bisectional or trisectional dosage units, as claimed by the '027 patent. Thus, Barr's reliance upon Zellers is misplaced, as that patent clearly does not anticipate the '027 patent's bisectional/trisectional scoring configuration, whether such scoring is disposed upon one surface or multiple surfaces. As no party has introduced into the Record any prior art teaching a disposition of score markings to facilitate fracturing of a tablet into equal bisectional and trisectional units, Barr's argument must fail.

### Mead Johnson's Motion to Strike

■ At the conclusion of the trial, Mead Johnson moved to strike the testimony of Barr's expert witness, Dr. Metin Celik, because Dr. Celik testified beyond the scope of his expert report, in violation of Rule 26(a) of the Federal Rules of Civil Procedure and this Court's prior instructions to the parties. *See* Fed.R.Civ.P. 26(a)(2)(B) (an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reason therefor."); Transcript of Pre–Trial Conference, July 28, 1998, at p. 19. Specifically, Dr. Celik testified regarding the Teva tablet design and the Zellers patent, subjects that Barr concedes were not included within Dr. Celik's expert report. *See* Barr's Post–Trial Brief at 22. Rule 37(c) of the Federal Rules of Civil Procedure clearly authorizes the Court to strike this testimony, and Barr has failed to offer substantial justification for its failure to include the Zellers patent in its expert's report. Barr has, however, demonstrated substantial justification for its failure to include the Teva tablet in its expert's report, correctly noting that this issue was interjected into the case by Mead Johnson's counsel during plaintiffs' opening

statement in response to a query from the Court. *See* Transcript, November 4, 1998 at 10–14. Barr properly elicited testimony regarding the Teva tablet in rebuttal to the assertions of plaintiff's counsel, which Barr did not anticipate at the time of its expert's report and deposition. The Court therefore grants Mead Johnson's motion with respect only to Dr. Celik's testimony regarding the Zellers patent.[3]

### Attorney Fees

■ All parties move for an award of attorney fees under 35 U.S.C. § 285, which authorizes the Court to award such fees to the prevailing party "in exceptional cases." The Court, however, declines to award attorney fees to the prevailing parties in this case. Mead Johnson argues that Barr's failure to provide a comprehensive expert's report and presentation at trial of testimony outside the scope of its expert's report constitute such grave misconduct as to make this action an "exceptional" case within the meaning of § 285. Although, as discussed above, Barr's conduct was improper, the Court finds this to be an isolated incident which, standing alone, is insufficient to warrant an award of attorney fees.

### CONCLUSION

For all of the foregoing reasons, the Court finds that Barr has infringed the '027 patent by submitting ANDA No. 71–196 with the FDA. Pursuant to 35 U.S.C. § 271(e)(4)(B), the Court hereby enjoins Barr, its officers, agents, attorneys and employees, and those acting in privity or concert with it, from engaging in the commercial manufacture, use, offer to sell or sale within the United States or importation into the United States, of the generic trazodone hydrochloride tablets having

---

**3.** The Court notes, however, that because Barr has expressly disclaimed any reliance upon the testimony of Dr. Celik regarding either the Zellers patent or the Teva tablet, stating in its post-trial memorandum that his testimony offers no support to Barr's defenses, the Court's ruling upon Mead Johnson's motion to strike has been rendered largely academic. *See* Barr Laboratories, Inc.'s Corrected Post–Trial Memorandum, December 1, 1998 at 24–25 and n9.

bisectable/trisectable structures for which it submitted ANDA No. 71–976 prior to the expiration of the '027 patent on March 26, 1999. In addition, pursuant to 35 U.S.C. § 271(e)(4), the Court directs that the effective date of the approval of ANDA No. 71–196 shall not be a date earlier than March 26, 1999. The Clerk of Court is directed to enter Judgment accordingly.

It is **SO ORDERED.**