SEB S.A., Plaintiff–Counterclaim Defendant,

v.

MONTGOMERY WARD & CO., INC., and Global–Tech Appliances, Inc., and Pentalpha Enterprises Ltd., Defendants–Counterclaimants.

No. 99 Civ. 9284(BDP).

United States District Court, S.D. New York.

March 20, 2001.

Norman Zivin, Robert T. Maldonado, Cooper & Dunham, New York City, for plaintiff.

William Dunnegan, Perkins & Dunnegan, New York City, for defendant.

1. Montgomery Ward has filed for protection under Chapter XI of the Bankruptcy laws.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff, SEB S.A. ("SEB") commenced this action in August 1999 against Montgomery Ward & Co., Inc.,[1] Global–Tech Appliances, Inc., and Pentalpha Enterprises Ltd. ("Pentalpha"), claiming that a deep fryer, marketed by Montgomery Ward LLC and manufactured by Pentalpha, infringed United States Patent No. 4,995,312 (the "'312 Patent"). See 35 U.S.C. § 271.

On December 15, 1999, this Court, based on Findings of Fact and Conclusions of Law dated November 23, 1999, issued a preliminary injunction against defendants' continued sale of the fryer. Defendants appealed the preliminary injunction to the United Court of Appeals for the Federal Circuit which affirmed on November 6, 2000. See 243 F.3d 566, 2000 WL 1673667 (Fed.Cir.2000). Those initial Findings and Conclusions are incorporated herein by reference.

In its earlier Findings, the Court construed claim 1 of the '312 Patent and concluded that SEB was likely to prove at trial that the fryer infringed claim 1. Specifically, the Court preliminarily enjoined defendants from:

> ... making, using, importing, selling, distributing, advertising, or offering for sale deep fryers which are covered by claim 1 of the U.S.Patent No. 4.995,312 ["the '312 Patent"], including the deep fryer supplied by Pentalpha and/or Global–Tech and sold by Montgomery Ward designated ADMIRAL® Large Capacity 3 qt. Deluxe Fryer Model No. 4564205.

Consequently this action is stayed as against Montgomery Ward. See 11 U.S.C. § 362(a).

After the December injunction, defendants developed and marketed a modified deep fryer—Admiral, Model No. 4567703—which plaintiff contends is virtually identical to the enjoined model. SEB moved on August 3, 2000 for a supplemental preliminary injunction and to cite defendants for contempt claiming that the modified fryer still infringes the '312 Patent.

Finding that the modified fryer infringes the '312 Patent by equivalences, this Court grants SEB further injunction relief against Pentalpha. The Court's Supplemental Findings of Fact and Conclusions of Law follow.

## FINDINGS OF FACT

1. Since this Court's December 19, 1999 preliminary injunction, defendant Pentalpha has been marketing through Montgomery Ward a redesigned ADMIRAL deep fryer (Model No. 4567703). Like the enjoined model, the modified fryer has the "cool touch" feature and incorporates no thermal bridges between the skirt and the pan. This modified fryer is virtually identical to the enjoined fryer, Model No. 45642205.

2. The modified fryer still has an insulated supporting screw which connects the metal pan to the base of the skirt. The contact established by that insulated support screw does not avoid infringement of the '312 patent.

3. Defendants have added to the assembly four additional vertical posts which extend upwardly from the bottom of the skirt toward the bottom of the pan. To prevent heat from transferring from the pan to the skirt, a portion of each post is made from insulating plastic. Thus, the posts do not create thermal bridges between the pan and the skirt, and each constitutes a "thermally insulated stabilizing element at the bottom of the hot oil pan." These additional posts do not avoid infringement.

4. The four insulated posts in the modified fryer do not perform any function beyond the function performed by the central, insulated screw in the enjoined fryer. Both avoid a thermal bridge between the skirt and the pan.

5. In the modified fryer, defendants have replaced the insulating ring with a series of insulating ring segments. The ring segments are made from heat resistant plastic and are attached and spaced circumferentially around the top edge of the skirt in the shape of a ring. The metal pan is suspended from the ring segments.

6. The ring segments in the modified fryer do not allow any appreciable amount of heat to escape from the space between the pan and the skirt. The pan includes a lip along its upper edge which bends over and covers any crack which might be found between the metal pan and the outer plastic housing.

7. The ring segments in the modified fryer perform their functions in essentially the same way as the continuous ring in the enjoined fryer. Both are physical, heat-resistant structures that create a thermal barrier between the skirt and the pan. Both permit the use of low-grade plastics in the manufacture of the skirt. Both make possible the fryers' "supercool" or "cool touch exterior" features.

8. The insulating ring segments used in the modified fryer provide thermal separation at the point of contact between the plastic skirt and the metal pan, and they support the pan at its upper edge. Thus, the use of ring segments, as opposed to the use of a continuous ring, do not change the essential nature of the device.

9. Defendants are selling the modified fryer under the same trademark ADMI-

RAL, and in the same retail box that they used to sell the enjoined fryer. The box displays an image of the enjoined fryer and emphasizes the "cool touch exterior" feature. The sale of the modified fryer in the same retail box as the enjoined fryer, falsely leads the public to conclude that defendants are free to sell a product that has been preliminarily enjoined.

10. The '312 patent specification states that the insulating ring perform five functions:

it defines the spacing between the pan 1 and the external plastic skirt 3,

it serves to support and to center the pan 1 within the skirt 3,

it completely closes-off the air space between the pan 1 and the skirt 3,

it permits free expansion of the pan 1 with respect to the skirt 3,

it has the effect of limiting heat transfer between the pan 1 and the skirt 3.

11. Independent claim 1 does not contain any requirement that the ring functions to seal the air space. Rather, dependent claim 13 recites the function of the ring sealing the air space. In addition, independent claim 1 does not contain any requirement directed to the flow (or lack of flow) of the air contained in the air space between the pan and the exterior skirt.

12. The ring segments define the spacing between the pan and the skirt, support and center the pan within the skirt, permit free expansion of the pan with respect to the skirt, and limit heat transfer between the pan and the skirt.

13. The insulating ring segments perform substantially the same function as the insulating ring, in substantially the same way, to achieve substantially the same result.

14. SEB is continuing to lose sales and, for the second time, is losing the benefit of its valid patent. SEB is also losing the protection afforded by the preliminary injunction.

## CONCLUSIONS OF LAW

■ 1. To determine patent infringement, the Court must construe the patent claims, and then compare the construed claims to the accused device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977, 976 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed.Cir.1998).

■ 2. Infringement exists when each and every element in an asserted claim is found in the accused device. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481 (Fed.Cir.1984), *cert. denied*, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984); *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed.Cir.1985).

■ 3. Patent claims are construed as a matter of law, based on the intrinsic patent evidence, namely, the claims, the specification, the drawings and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996).

■ 4. Extrinsic evidence, such as expert testimony, can be relied upon to resolve ambiguities in the claim language and to assist in understanding the claims. *Markman*, 52 F.3d at 980–81; *Vitronics*, 90 F.3d at 1583; *Canon Computer Sys. v. Nu–Kote Int'l*, 134 F.3d 1085, 1089 (Fed. Cir.1998).

■ 5. The modified fryer does not literally have a "ring which joins" the top edge of the skirt to the pan. The modified fryer substitutes segmented spaces for rings as the Court has construed that term. Consequently, the modified fryer does not literally infringe because the

"ring" does not join the pan to the "skirt." Rather, the spacers join the metal pan to a plastic ring.

■ 6. However, under the doctrine of equivalents, if a particular claim element is not literally found in the accused device, there still may be infringement if the accused device contains an equivalent of that claim element. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The doctrine prevents defendants from avoiding liability by making trivial changes to avoid a literal reading of the patent claim. *Mead Johnson & Co. v. Barr Laboratories, Inc.*, 38 F.Supp.2d 289 (S.D.N.Y.1999).

■ 7. The test for equivalence is whether the differences between the claim element and the corresponding element of the accused device are "insubstantial." *Warner–Jenkinson*, 520 U.S. 17, 117 S.Ct. at 1046–47. To determine substantiality, courts consider whether the accused device performs substantially the same function as the claim element, in substantially the same way, to achieve substantially the same result. *Graver Tank*, 339 U.S. at 608, 70 S.Ct. 854.

■ 8. Infringement under the doctrine of equivalents does not require exact identity of elements. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580 n. 3 (Fed.Cir.1984).

■ 9. In this case, Pentalpha's ring segments are equivalent to the "ring" element of claim 1 because there is no substantial difference between them. *See Line Material Co. v. Brady Electric Mfg. Co.*, 7 F.2d 48, 51 (2d Cir.1925) ("Infringement is not avoided by making an element of two separate pieces, rather than a single piece, where the two separate pieces perform the same function as a single device.").

10. Even if Pentalpha's modified ADMIRAL fryer fails to perform only one function of the ring (i.e. completely closing off the air space between the pan and the skirt), the ring segments of the modified ADMIRAL fryer perform substantially the same function as the claimed ring, in substantially the same way, to achieve substantially the same result. *du Pont*, 750 F.2d at 1580. SEB is likely to prove at trial that the modified fryer infringes at least claim 1 of the '312 patent under the doctrine of equivalents.

11. In this case, there is no prosecution history estoppel. The prosecution history of the '312 patent does not contain amendments to claim 1. *See* '312 patent, col.5, lines 23–25; *Festo Corp. v. Shoketsu Kinzoku*, 234 F.3d 558 (Fed.Cir.2000). SEB's statements to the Patent Office with respect to Spanish Utility Model No. 290,283, which was disclosed to the Patent Office by SEB, were not directed to the claim at issue in this action. Further, Pentalpha's modified fryer does not have the distinguishing feature, exterior air vents, which were shown in that Spanish reference and about which the statements were made by SEB in the Patent Office. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 991–92 (Fed.Cir.1999).

12. Pentalpha has violated the December 16, 1999 preliminary injunction. By selling the modified ADMIRAL fryer, Pentalpha has changed the status this Court intended to preserve through its preliminary injunction. Enjoining the sale of the modified fryer will restore the status quo. *Ireco*, 773 F.2d at 1231.

■ 13. This Court has jurisdiction to enforce its preliminary injunction and to prevent further infringement. *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir.1996);

*New York State Natl' Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

14. SEB has established all of the factors needed for a preliminary injunction with respect to the modified fryer. SEB is likely to succeed on the merits at trial; it is suffering irreparable harm from the continued infringement; the balance of hardships tips in SEB's favor; and a supplemental injunction will not disserve the public interest. *Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed. Cir.1988).

15. SEB's showing of infringement satisfies the preponderance of the evidence standard for obtaining a preliminary injunction. *New York State Nat'l. Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

■■■ 16. The statutory presumption of validity remains unrebutted. Indeed, since invalidity has not been raised, the '312 patent is not likely to be invalidated at trial. 35 U.S.C. § 282; *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed.Cir.1988). Consequently, SEB is entitled to a presumption of irreparable harm because it can clearly establish the validity and infringement of the '312 patent. *Reebok Internat'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed.Cir.1994); *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384 (Fed.Cir.1987). In addition, SEB has demonstrated actual irreparable injury.

■■■ 17. The balance of hardships tips in SEB's favor because defendants, once enjoined, bore the burden of avoiding further infringement:

> The alterations made by defendants ... are negligible and they are grudging. Having been caught with a hand in the cookie jar, defendants cannot avoid the claims by taking fewer or smaller cookies. They should have never reached into the cookie jar in the first place, and having done so must keep far away from it.

*Johnson & Johnson v. Quality Pure Mfg., Inc.*, 484 F.Supp. 975, 980 (D.N.J.1979) (preliminarily enjoining trademark infringement); *KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522 (Fed.Cir.1985) (concurring opinion). Pentalpha's design changes reflect a disregard for their affirmative duty to comply with the Court's Injunction.

18. The balance of hardships further tips in SEB's favor because Pentalpha is seeking an unfair competitive advantage by using a retail box that shows and describes the enjoined fryer. This false representation further tips the balance of hardships in SEB's favor.

19. The public interest is harmed by defendants' violation of this Court's preliminary injunction. A supplemental preliminary injunction will assure a fair and competitive marketplace. *Enviro–Clear Co., Inc. v. Baker Internat'l Corp.*, No. 85 Civ. 1253 (D.N.J. July 15, 1986); *Johnson & Johnson*, 484 F.Supp. at 980 ("the public interest requires that customers be not deceived about the identity and source of the articles they buy").

■■■ 20. Accordingly, a supplemental preliminary injunction is warranted which prohibits Pentalpha from importing or selling any deep fryer having a "cool touch exterior" feature without leave of court. *See Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed.Cir.1998).

### CONCLUSION

SEB's application for supplemental injunctive relief is granted. The plaintiff is

directed to settle an Order in ten days on five days notice. The Court shall hold a hearing with respect to plaintiff's application for a contempt citation on April 23, 2001 at 9:00 a.m.

**SO ORDERED**