FIELDTURF, INC. and Fieldturf
International, Inc., Plaintiffs–
Appellants,

v.

SOUTHWEST RECREATIONAL
INDUSTRIES, INC., Defendant–
Appellee.

No. 03–1167.

United States Court of Appeals,
Federal Circuit.

DECIDED: Feb. 4, 2004.

Jonathan S. Franklin, Hogan & Hartson L.L.P., of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Christopher T. Handman and Chanel A. Reedy; and William F. Haigney, Hogan & Hartson L.L.P., of New York, New York. Of counsel on the brief were Arthur S. Beeman, Susan L. Williams, Thomas P. O'Brien III, and Peter J. Stavros, Frost Brown Todd, LLC, of Louisville, KY.

P. Douglas Barr, Stoll, Keenon & Park LLP, of Lexington, KY, argued for defendant-appellee. With him on the brief was Diane M. Carlton. Of counsel were Gwendolyn R. Pinson and Cynthia L. Higgs.

Before MAYER, Chief Judge, MICHEL and SCHALL, Circuit Judges.

MAYER, Chief Judge.

Fieldturf, Inc. and Fieldturf International, Inc. ("Fieldturf"), the purported exclusive licensees of U.S. Patent No. 4,337,283 ("'283 patent"), appeal the judgment of the United States District Court for the Eastern District of Kentucky dismissing with prejudice claims alleging violations of the Sherman Antitrust Act, the Lanham Act, the Kentucky Consumer Protection Act, the common law of the Commonwealth of Kentucky, and, most relevant here, the Patent Act. *Fieldturf, Inc. v. Southwest Recreational Indus.*, 235 F.Supp.2d 708 (E.D.Ky.2002). Because Fieldturf lacks standing to enforce the '283 patent, we vacate and remand that portion of the district court's judgment pertaining to non-infringement with instructions to dismiss. We consequently have no jurisdiction over the remaining issues and transfer the case to the United States Court of Appeals for the Sixth Circuit, pursuant to 28 U.S.C. § 1631.

## Background

Fieldturf and Southwest Recreational Industries, Inc. ("Southwest") are competitors in the artificial turf market, a market primarily geared toward providing an alternative to natural grass for playing surfaces for athletic games. Southwest manufactures and markets at least two types of artificial turf systems: AstroTurf®, a carpet-like turf system, and AstroPlay®, a filled-turf system that more closely resembles the appearance of natural grass. Fieldturf manufactures and markets its own filled-turf system, FieldTurf®, which is the commercial embodiment of the '283 patent.

Fieldturf claims to possess the right to manufacture and market the embodiment of the '283 patent by virtue of a series of transactions. On December 29, 1980, approximately a year and a half before the '283 patent issued, Frederick T. Haas, Jr., the inventor of record, assigned all rights to the pending patent to a Louisiana partnership, Mod–Sod Sports Surfaces ("MSSS"), owned by Haas and his three children. On March 1, 1994, Mod–Sod Sports Surfaces, Inc. ("MSSSI"), the purported successor in form to MSSS, and Haas entered into an exclusive licensing agreement with SynTenniCo, Inc. ("STC") and Jean Prevost. This gave STC and Prevost the exclusive right to manufacture and market commercial embodiments of the '283 patent, save a limited right retained by MSSSI and Haas to "develop[ ], display[ ], commercialize[ ], and market[ ]" to potential customers. In that same document, MSSSI and Haas also retained the right of first refusal to enforce the '283 patent against infringers, enabling STC and Prevost to bring suit only after MSSSI and Haas had declined to do so. On June 19, 1998, Prevost, on behalf of STC, and

Haas, on behalf of MSSSI, entered into another exclusive licensing agreement that was deemed to "cancel[ ] and replace[ ]" the 1994 agreement. On August 17, 1999, STC assigned its rights in the licensing agreement to Fieldturf Holdings, Inc., which in turn assigned its rights to Fieldturf, Inc. on September 14, 1999.

For years Fieldturf and its predecessors in interest consistently have maintained that AstroPlay®, when installed with infill comprising both sand and rubber, infringes the '283 patent. For example, STC filed suit against Southwest in 1998, in part to prohibit Southwest from manufacturing and marketing AstroPlay® with rubber and sand infill for the duration of the '283 patent. As part of a settlement stemming from that litigation, Southwest agreed to market AstroPlay® with an infill consisting entirely of resilient particles and no sand. In this case, Fieldturf alleges that Southwest resumed infringement of the '283 patent immediately following the execution of the settlement agreement "by manufacturing its AstroPlay® grasslike carpets in the United States and then shipping that material overseas, with the understanding that the infringing sand-and-rubber infill would be added abroad." On summary judgment, the district court ruled against Fieldturf on all counts, and Fieldturf appeals. Southwest asserts that Fieldturf lacks standing to enforce the '283 patent, and the patent claim should be dismissed for that reason.

## Discussion

■ Before we can address the merits, we must decide whether Fieldturf has standing to sue on the patent. *See Myers Investigative & Sec. Servs. v. United States,* 275 F.3d 1366, 1369 (Fed.Cir.2002) (standing is a "threshold jurisdictional issue"); *PIN/NIP, Inc. v. Platte Chem. Co.,* 304 F.3d 1235, 1241 (Fed.Cir.2002) ("court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits" (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997))). Southwest brought the issue of standing to the court's attention via a preliminary motion to dismiss, which was denied. A motion to dismiss denied by the order of a single judge, however, does not become the law of the case. *See* Fed. R.App. P. 27(c); *Nilssen v. Motorola, Inc.,* 203 F.3d 782, 785 n. 2 (Fed.Cir.2000). We are therefore free, indeed obligated, to determine whether Fieldturf has standing, which we approach *de novo. Enzo APA & Son v. Geapag A.G.,* 134 F.3d 1090, 1092 (Fed.Cir.1998). If the district court had no jurisdiction under 28 U.S.C. § 1338(a), neither do we under 28 U.S.C. § 1295(a)(1).

■ To bring an action for patent infringement, a party must be either the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue. *Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 240 F.3d 1016, 1017 (Fed. Cir.2001) (citing 35 U.S.C. §§ 100, 281 and *Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481, 1483 (Fed.Cir.1998)). A purported exclusive licensee must show that he possesses " 'all substantial rights' in the patent." *Id.* (citing *Textile Prods.,* 134 F.3d at 1484). Lacking all substantial rights, he may bring suit against "third parties only as a co-plaintiff with the patentee" or a successor in title to the patentee. *Id.* (citing *Textile Prods.,* 134 F.3d at 1484). Otherwise, he lacks standing. *Id.*

■ Fieldturf asserts that it has standing to enforce the '283 patent against third parties not because it is the patentee or a successor in title to the patentee, but rather because it is an exclusive licensee. Consequently, it has the burden to provide evidence endowing it with all substantial rights in the patent. *See id.* (citing *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1250 (Fed.Cir.2000)). Fieldturf says the

1998 letter agreement between its predecessor in interest, STC, and MSSSI satisfies this burden.

To determine whether an agreement conveys all substantial rights in the patent, "we must ascertain the intention of the parties and examine the substance of what was granted by the agreement." *Id.* (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 874 (Fed.Cir.1991)). The 1998 agreement is straightforward—in one page, STC, Prevost, MSSSI, and Haas agreed only that in exchange for consideration proffered to MSSSI and Haas, STC "[would] continue to be the exclusive licensee of [the '283 patent] except for golf products"; that in exchange for that same consideration, "all past obligations owing by [STC] and Prevost to [MSSSI and Haas] [would be] waived and released"; that STC and Jean Prevost would have a right of first refusal to license any future invention related to the '283 patent; and that the 1998 agreement would "cancel[ ] and replace[ ] the exclusive license agreement signed by [the parties] in 1994." Notably, the 1998 agreement did not address, as the 1994 licensing agreement had, whether MSSSI and Haas, or STC and Prevost, would have the right to enforce the '283 patent against infringers. The 1998 agreement also did not address, as the 1994 agreement had, whether MSSSI and Haas would retain the right to "develop, display, commercialize, and market" embodiments of the '283 patent. These omissions are significant.

First, without granting STC the right to enforce the patent, either explicitly or impliedly, the document conveys no more than a bare license. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1062 (Fed.Cir.2003) (the failure to transfer the right to sue infringers distinguishes a license from an assignment, and the former "generally affords the licensee no right to sue for infringement");

*see also Prima Tek II, L.L.C. v. A–Roo Co.,* 222 F.3d 1372, 1379–80 (Fed.Cir.2000) ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory." (emphasis in original)); *Vaupel,* 944 F.2d at 875–76 (the grant of the right to enforce the patent is "particularly dispositive" of standing issues because of the underlying policy to prevent "two suits on the same patent against a single infringer"). Second, the licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights. *See, e.g., Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1132 (Fed.Cir.1995). Because the 1998 agreement is silent with respect to these important considerations, it is nothing more than an exclusive licensing agreement that fails to convey all substantial interest in the '283 patent. Therefore, Fieldturf lacks standing, and the claim must be dismissed.

The next question is whether the appropriate course of action is to remand for dismissal with or without prejudice. Ordinarily, dismissal for lack of standing is without prejudice. *H.R. Tech., Inc. v. Astechnologies, Inc.,* 275 F.3d 1378, 1385 (Fed.Cir.2002). On occasion, however, a dismissal with prejudice is appropriate, especially where "it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem." *See id.* (citing *Textile Prods.,* 134 F.3d at 1485, as an example). An exclusive licensee can cure a defect in standing by joining the patentee or the successor in title to the patentee. *See Mentor H/S,* 240 F.3d at 1017. However, the record before us is insufficient to determine whether the defects in Fieldturf's

standing can be cured. We instead leave these issues to be resolved by the district court in its determination of whether to dismiss with or without prejudice.

The main problem for Fieldturf is that it has not identified the successor in title of the '283 patent, if indeed there is one. Haas assigned his interests in the patent to MSSS, a Louisiana partnership. Absent from the record, however, is any document conveying interests in the patent from MSSS, the partnership, to any other party-particularly MSSSI, the Louisiana corporation. Without such documentation, it is questionable whether MSSSI conveyed any rights to STC, Fieldturf's predecessor in interest. *See Prima Tek II*, 222 F.3d at 1382 ("an owner or licensee of a patent cannot convey that which it does not possess"); *see also Mentor H/S*, 240 F.3d at 1017 ("party asserting that it has all substantial rights in the patent 'must produce ... written instruments documenting the transfer of proprietary rights'" (citing *Speedplay*, 211 F.3d at 1250)). Fieldturf maintains that a document transferring rights from MSSS to MSSSI is unnecessary because either MSSSI held the rights as a successor in form to the MSSS partnership, or Haas continued to hold the rights as the controlling partner of MSSS. In either case, the argument goes, the 1998 letter agreement is sufficient to transfer rights in the patent. This argument does little to assist in the identification of the successor in title to the patent, and such identification is necessary if Fieldturf is to cure its standing defect.

Even if this threshold issue is resolved in Fieldturf's favor, and MSSSI is conclusively proven to be MSSS's successor in title, Fieldturf still must establish that MSSSI can be feasibly joined before it can maintain the present suit for infringement. Jean Prevost, as a co-licensee with STC to both agreements, may also need to be joined to complete Fieldturf's standing. Fieldturf simply cannot maintain a suit for infringement unless all such concerns about the completeness of its standing are resolved in its favor. We cannot ascertain from this incomplete record whether joinder of these parties would be necessary or possible. Thus, it is for the district court to complete these inquiries, and then determine, in its discretion, whether to dismiss the case with or without prejudice.

*Conclusion*

Accordingly, the judgment is vacated-in-part, and the case is remanded-in-part, to the United States District Court for the Eastern District of Kentucky with instructions to dismiss, and transferred-in-part to the United States Court of Appeals for the Sixth Circuit.

*VACATED IN PART, REMANDED IN PART, AND TRANSFERRED IN PART.*