**GIANTCEUTICAL, INC., Plaintiff,**

v.

**KEN MABLE, INC., Various John Does, Jane Does and XYZ Companies, Defendants.**

No. 04 Civ. 8601(VM).

United States District Court, S.D. New York.

Feb. 16, 2005.

---

injuries were considerably more direct and concrete.

**20.** *See* 42 U.S.C. § 1973–gg2(b).

Po W. Yuen, New York City, Steven Verveniotis, Miranda & Sokoloff, LLP, Mineola, NY, for Plaintiff.

Terrence Michael Randell, Law Offices of Michael Randell, Law Offices of Michael G. Dowd, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

This matter is before the Court pursuant to an order to show cause filed by Giantceutical, Inc. ("Giantceutical") against Ken Mable, Inc. ("Mable"), seeking a preliminary injunction, temporary restraining order, and ex parte seizure and impoundment of goods based on an alleged patent infringement. On November 4, 2004, the Court denied Giantceutical's request for a temporary restraining order and ex parte seizure and impoundment and set a date for a hearing regarding a preliminary injunction. The hearing was held on No-

vember 24, 2004 (the "November 24 Hearing"). The Court denies Giantceutical's motion for a preliminary injunction.

## I. BACKGROUND

Giantceutical's motion concerns U.S. Patent No. 6,077,872 (the "872 Patent").[1] The 872 Patent relates to the use of calcium L-threonate in preventing, inhibiting and curing osteoporosis and rickets. According to Giantceutical, the 872 Patent was issued on June 20, 2000 to Beijing Juneng Asia Pacific Life Scientific Research Center ("Beijing"). Giantceutical claims that Beijing assigned the patent to Juneng Industry Co., Ltd. ("Juneng") on or about June 26, 2002.[2] This assignment was recorded by the U.S. Patent and Trademark Office on August 14, 2002. Giantceutical further claims that on October 2, 2003, Juneng executed a License Agreement granting Giantceutical an "exclusive right and license in the [United States], . . . to use the Technology[3] to make or manufacture or have made or manufactured the Products,[4] and to carry out the invention as claimed in the Patent by marketing, distributing and selling the Products," (License Agreement, Art. 2.1, Ex. A to Yuen Decl.), for a period of two years. In exchange for this alleged exclusive right, Giantceutical states that it issued ten percent of its shares, worth approximately $3,000,000, to the licensor. (Pl.'s Mem. at 2.[5]) Giantceutical also claims that it has incurred more than $1,500,000 in expenses for advertising and promoting its products in the licensed territory.

In or about April 2004, Giantceutical allegedly learned that Bonepharm, Inc. ("Bonepharm"), a corporation organized and existing under the laws of California, had been purchasing, producing, distributing, offering for sale, selling, storing, vending and/or marketing a calcium dietary supplement called "Bonelux," which allegedly contains calcium L-threonate as its primary ingredient. According to Giantceutical, one of the principals of Bonepharm is a former employee of Juneng and a co-inventor of the invention claimed in the 872 Patent. In or about July 2004, Giantceutical allegedly learned that Mable had been purchasing, producing, distributing, offering for sale, selling, storing, vending and/or marketing Bonelux in and around the New York area.

Giantceutical commenced an action for patent infringement against Bonepharm in the Central District of California in October 2004. That action was dismissed without prejudice based on improper venue on September 15, 2004. On October 4, 2004, Giantceutical re-filed the action in the Northern District of California.

---

1. The following factual summary derives from the Declaration of Steven Verveniotis, dated Oct. 22, 2004, the Complaint, dated Oct. 22, 2004, and the Memorandum of Law in Support of Plaintiff's Application for a Preliminary Injunction, Temporary Restraining Order, Seizure and Impoundment, dated Oct. 22, 2004 ("Pl.'s Mem.").

2. As discussed below, the parties dispute the extent of the assignment.

3. Article 1.1 of the License Agreement, dated October 2, 2003 (attached to the Reply Declaration of Po W. Yuen, dated November 18, 2004) ("Yuen Decl."), as Ex. A, defines "technology" as "technical information and know

how [sic] pertaining to the production and use of the Compound for treating, preventing and/or inhibiting osteoporosis and rickets."

4. Section B of the Recitals to the License Agreement defines the "Products" as "products containing the Compound for use in the Patented Method." Section A of the Recitals defines the "Compound" as "calcium L-threonate" and the "Patented Method" as "the production and use of calcium L-threonate . . . for treating, preventing and/or inhibiting osteoporosis and rickets."

5. The Memorandum, as submitted, does not contain page numbers.

Giantceutical seeks injunctive relief against Mable on the ground that Mable is allegedly infringing the 872 Patent by distributing a product containing calcium L-threonate in violation of the License Agreement. Mable argues that Giantceutical does not have standing to bring this action because Beijing did not assign all substantial rights in the 872 Patent to Juneng and because Juneng, in turn, did not grant Giantceutical the right to commence legal proceedings with respect to infringement of the patent. Mable further argues that, even assuming that Giantceutical does have standing to commence an action for patent infringement, it does not meet the standard necessary to obtain preliminary relief. In particular, Mable argues that Giantceutical cannot make a clear showing of a reasonable likelihood of success on the merits because Mable has raised a substantial question regarding the infringement or validity of the 872 Patent.

## II. *DISCUSSION*

### A. *STANDING*

■ Before addressing the merits of the instant motion, it is necessary to determine whether Giantceutical has standing to sue on the patent. *See Fieldturf, Inc. v. Southwest Recreational Industries, Inc.,* 357 F.3d 1266, 1268 (Fed.Cir.2004) (citations omitted). A party has standing to bring an action for patent infringement only if it is the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue. *Id.* (citations omitted). Giantceutical argues that it has standing to bring this action as an exclusive licensee of the 872 Patent.

■ A party is an exclusive licensee to a patent if it "possesses all substantial rights in the patent." *Id.* (citations and quotation marks omitted). As noted above, Giantceutical claims that Juneng granted it such rights in the patent and that Juneng was entitled to do so because Beijing had as-

signed the patent to Juneng. Therefore, in order to determine whether Giantceutical possesses all substantial rights in the patent it is first necessary to determine whether those rights were assigned to Juneng, such that Juneng could validly convey them to Giantceutical.

Mable argues that Giantceutical has failed to establish that Beijing assigned the patent to Juneng. He argues that the document cited by Giantceutical in support of the claim that Beijing assigned the patent to Juneng, the Notice of Recordation of Assignment Document ("Recordation Notice") (attached to the Declaration of Jackson Wen, dated Oct. 20th, 2004, ("Wen Decl.") as Ex. 2 (the Declaration of Jackson Wen is itself attached to the Declaration of Steven Verveniotis, dated October 22, 2004, as Ex. A)), "shows only that Beijing assigned some interest in the 872 patent to Juneng and nothing more." (Defendant Ken Mable, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, Temporary Restraining Order, Seizure and Impoundment ("Def.'s Mem.") at 2.) The Recordation Notice states that it concerns the "assignment of assignor's interest" and, in parentheses, instructs the reader to "see document for details." (Recordation Notice, attached to Wen Decl. as Ex. 2.) Giantceutical has not, however, provided the document referred to here to the Court, nor does Giantceutical address this issue in its pleadings. As a result, it is impossible for the Court to determine the extent of the assignment referred to in the Recordation Notice.

■ Even assuming that the assignment from Beijing entitled Juneng to grant Giantceutical the right to exclusive use of the patent in the United States, Giantceutical has not adequately demonstrated that Juneng conveyed to it all substantial rights in the patent. One of the substantial rights

that must be conveyed to a party in order to make that party an exclusive licensee is the right to enforce the patent. *See Fieldturf, Inc.,* 357 F.3d at 1269 (citations omitted). If an agreement does not grant "the right to enforce the patent, either explicitly or impliedly, the document conveys no more than a bare license," *id.* (citations omitted), *i.e.,* a non-exclusive license. *See Moore U.S.A. Inc. v. Standard Register Co.,* 60 F.Supp.2d 104, 107 (W.D.N.Y.1999). The grant of the right to enforce the patent is "particularly dispositive" of standing issues because of the underlying policy to prevent "two suits on the same patent against a single infringer." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875–876 (Fed.Cir. 1991).

Giantceutical claims that Article 7.2 of the License Agreement executed by Juneng "grants Giantceutical the right to commence legal proceedings for infringement." (Pl.'s Mem. at 3.) In fact, Article 7.2 only specifies the conditions under which the right to enforce the patent may be transferred to Giantceutical with respect to specific infringement proceedings: "If Licensor elects not to exercise control of any infringement proceedings in the Territory [*i.e.,* the United States and Taiwan] and advises Licensee in writing of such election, Licensee may commence proceedings in respect of the infringement or suspected or threatened infringement on its own behalf and at its own expense." (License Agreement Art. 7.2, Ex. A to Yuen Decl.)

In its initial submission to the Court, Giantceutical argued that a Letter of Authorization from Juneng to Giantceutical, dated September 21, 2004 (the "First Authorization Letter"), constituted such a written advisory. After the November 24 Hearing, at which deficiencies in the First Authorization Letter were raised, Giantceutical submitted a second, undated, Letter of Authorization from Juneng to Gi-antceutical (the "Second Authorization Letter"), allegedly compensating for any deficiencies in the First Authorization Letter. Neither of these letters is sufficient to demonstrate that Juneng has provided Giantceutical with a written advisory that it has elected not to exercise control of the instant infringement proceedings.

The First Authorization Letter explicitly authorizes Giantceutical only "to seek legal action independently against BonePharm, Inc. for manufacturing and selling Bonelux in the U.S. [sic] . . . ," not against Mable. In its initial submission, Giantceutical did not allege that BonePharm had any relationship with Mable such that authorization to sue the former would also constitute authorization to sue the latter. At the November 24 Hearing, Giantceutical argued that Mable, as the exclusive east coast distributor of Bonelux, is an agent of BonePharm. (*See* Tr. of November 24 Hearing at 8–9.) According to Giantceutical, the authorization to sue BonePharm must be construed to include authorization to sue its agents. (*See id.*) Giantceutical has not cited any law in support of the proposition either that Mable's status as a distributor of BonePharm qualifies it as an agent of BonePharm or that authorization to sue a given entity should be construed as authorization to sue its agents. The former proposition is subject to doubt in light of the agency law principle that "[o]ne who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." Restatement (Second) of Agency § 14K (2004). *See also, e.g., Alvarez v. Felker Mfg. Co.,* 230 Cal.App.2d 987, 41 Cal.Rptr. 514 (relationship between manufacturer and distributor was merely that of buyer and seller, not that of agent and principal).

The Second Authorization Letter submitted by Giantceutical purports to authorize Giantceutical to sue Mable for selling Bonelux in the United States.[6] The Second Authorization Letter bears a seal containing Chinese characters and a signature, which also appears to be written in Chinese characters. Giantceutical has not provided the Court with translations of either the seal or the signature, nor has it informed the Court of the name or position within Juneng of the individual who signed either of the Authorization Letters.

Mable argues that the Second Authorization Letter should not be considered by the Court because it is not an original, it is undated, and "[r]eview of the signatures on both letters [the First Authorization Letter and the Second Authorization Letter] by persons conversant in the Chinese language seems to indicate that the two letters were signed by the same person," even though "the Chinese signatures are completely different." (Letter from Michael G. Dowd to Judge Marrero, dated November 30, 2004, at 1–2.) The problems with the Second Authorization Letter, however, stem more from the lack of information concerning when and by whom it was executed than from any specific reason to doubt its authenticity. Giantceutical, in its letter to the Court accompanying the Second Authorization Letter, states that it "obtained [that letter] on November 26, 2004 from the licensor." (Letter from Steven Verveniotis to Judge Marrero, dated November 29, 2004.) It does not state the date on which the letter was executed nor does it state the specific identity of the individual signatory. Without a date or any information regarding the identity or authority of the signatory of the Second Authorization Letter, the Court has little basis for determining whether the Second Authorization Letter authorizes the instant proceedings against Mable or whether it was executed by a person with authority to bind Juneng.

Because significant questions remain regarding the extent of the original assignment of the 872 Patent from Beijing to Juneng and regarding the effectiveness of the First and Second Authorization Letters to grant Giantceutical the right to sue Mable, the Court finds on the record before it that Giantceutical lacks standing to sue Mable for his alleged infringement of the 872 Patent.

## B. *PRELIMINARY INJUNCTION*

Even if Giantceutical had cured the standing deficiencies identified here so as to enable it to enforce the 872 Patent, a temporary injunction against Mable would not be warranted, as the Court noted at the hearing on November 24, 2004. The Court here briefly summarizes the findings, reasoning and conclusions supporting that determination.

■ Pursuant to 35 U.S.C. § 283, district courts may grant injunctive relief to a patent holder in order to "prevent the violation of any right secured by patent." The decision whether or not to grant a preliminary injunction pending final resolution of an infringement suit is "within the sound discretion of the district court." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (citation omitted). In order to show that a preliminary injunction is warranted, Giantceutical must prove: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com,* 239 F.3d at 1350. The party seeking a preliminary

---

**6.** The Second Authorization Letter misspells Mable's name as "KEN MAPLE." The Court will assume that this is merely a typographical error.

injunction must establish both of the first two factors, at a minimum, in order to prevail. *Id.*

### 1. *Reasonable Likelihood of Success on the Merits*

In order to demonstrate a reasonable likelihood of success on the merits, Giantceutical must show, in light of the burdens that will inhere at trial on the merits of its infringement claim, (1) that it will likely prove that Mable has infringed the 872 patent, and (2) that Giantceutical's infringement claim "will likely withstand [Mable's] challenges to the validity and enforceability of the [872] Patent." *Id.* If Mable "raises a substantial question concerning either infringement or validity, . . ., the preliminary injunction should not issue." *Id.* at 1350–1351 (citation omitted).

Mable has raised a substantial question concerning infringement in this case. "It is well settled that an infringement analysis involves two steps: the claim scope is first determined, and then the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Id.* at 1351 (citation omitted). In this analysis, "[t]he first step is a question of law, whereas the second presents a question of fact." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F.Supp.2d 362, 371 (S.D.N.Y.2000) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir. 1998) (en banc)).

██ The claim scope is not in dispute in this case. The parties' dispute instead concerns whether Mable is in fact distributing a product containing the patented compound, calcium L-threonate. Assuming that Giantceutical is correct that Mable is a distributor of Bonelux,[7] the question remains whether Bonelux contains calcium L-threonate. As noted, Giantceutical must demonstrate that there is a reasonable likelihood that it will succeed at the merits stage in showing that Bonelux does contain this compound. The evidence that Giantceutical has presented in support of its motion for a preliminary injunction does not support a finding that there is a likelihood of success in making this showing.

As Giantceutical notes, calcium L-threonate is not listed as an ingredient on the Bonelux label or in other Bonelux literature. To prove that Bonelux contains calcium L-threonate, Giantceutical relies on a single chemical analysis that was performed by an interested non-party, Beijing. The analysis was submitted to the Court in Chinese with only one portion translated into English. The translated portion states only that the Bonelux "sample's infrared reading is basically the same as the Calcium L–Threonate." (Supplemental Affidavit of Jackson Wen, dated Nov. 1, 2004, ¶ 6.) Giantceutical does not specify what is meant by "basically the same," nor does it explain the significance of a similar infrared reading. In order to demonstrate infringement, though, "the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 250 F.Supp.2d 372, 381 (S.D.N.Y.2003)

---

7. Mable contended in his initial submission that Giantceutical had "not submitted any proof or evidence that KEN MABLE, INC. produces, distributes and/or sells Bonelux, . . . ." Def.'s Mem. at 5. Giantceutical has since submitted a Reply Declaration of Adam I. Kleinberg, dated Nov. 18, 2004, in which Mr. Kleinberg states that he has first-hand knowledge that Mable openly advertises and sells Bonelux in his store. Mable's most recent submission, filed after the Kleinberg Declaration, does not claim that there is insufficient evidence to show that Mable sells Bonelux. *See* Letter to Judge Marrero from Michael Dowd, dated November 22, 2004.

(citing *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199 (Fed.Cir. 1994)). Because Giantceutical does not explain whether or how the determination that the infrared reading of Bonelux is "basically the same" as that of calcium L-threonate demonstrates the presence of every element of calcium L-threonate in Bonelux, it is impossible for the Court to determine whether there is even a claim that "every element [of calcium L-threonate] or its substantial equivalent" is present in Bonelux.

Further, even if Giantceutical had clearly made such a claim, the fact that the sole evidence presented in support of that claim was generated by an interested non-party and that only a small portion of that evidence has been translated from Chinese into English render that evidence inadequate to prove a likelihood of success on the merits.

### 2. *Irreparable Harm*

■ Giantceutical has also failed to demonstrate that it would suffer irreparable harm if it were denied a preliminary injunction. Giantceutical claims that it would be irreparably harmed by the denial of its motion for a preliminary injunction because Mable's continued sale of the allegedly infringing product is "reducing [Giantceutical's] right of statutory exclusivity" and resulting in the "loss of [Giantceutical's] product's market share." (Pl.'s Mem. at 6.) Where a patent holder makes a "clear or strong showing" of infringement and validity, irreparable injury is presumed. *SEB S.A. v. Montgomery Ward & Co., Inc.,* 137 F.Supp.2d 285, 290 (S.D.N.Y.2001). Because Giantceutical has not made such a showing, there is no presumption of irreparable harm in this case. Giantceutical has not provided any explanation of how it would be irreparably harmed based on the particular facts of this case, but instead relies exclusively on the legal conclusions that the reduction of a patent holder's right of statutory exclusivity and the loss of the patent holder's market share can in some cases constitute irreparable harm. In order to demonstrate irreparable harm, though, the "plaintiff must make a showing of actual, substantial harm resulting from the alleged infringement." *Travelers Express Co., Inc. v. Transaction Tracking,* 305 F.Supp.2d 1090, 1095 (D.Minn.2003) (citing *Nutrition 21 v. United States,* 930 F.2d 867, 871 (Fed.Cir.1991); *Toro Co. v. White Consol. Indus., Inc.,* 920 F.Supp. 1008, 1020 (D.Minn.1996)). Giantceutical's unsupported claim that the denial of a preliminary injunction would "allow the defendants to . . . obtain a share in a competitive market place," (Pl.'s Mem. at 6), is inadequate to demonstrate such harm.

Although the Court's determinations with regard to the first two elements of Giantceutical's claim for a preliminary injunction constitute a sufficient basis on which to deny the injunction, *see Ecolab v. JohnsonDiversey, Inc.,* 95 Fed.Appx. 322 (Fed.Cir.2004) ("Because the court had resolved the first two factors against [the party seeking a preliminary injunction], it was permissible for the court to decline to address [the last two] factors.") (citing *Jack Guttman, Inc. v. Kopykake Enters., Inc.,* 302 F.3d 1352, 1356 (Fed.Cir.2002); *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 974 (Fed.Cir.1996)), the Court will briefly address the last two factors of the preliminary injunction analysis, the balance of hardships and the public interest.

### 3. *Balance of Hardships*

■ As in its argument that it would suffer irreparable injury without preliminary relief, Giantceutical relies on legal conclusions, rather than a factual demonstration, to support its claim that the balance of hardships weighs in favor of granting a preliminary injunction. While

acknowledging that "[a] preliminary injunction is a 'drastic remedy,' and the hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating,'" *Easter Unlimited Inc. v. Rubie's Costume Company, Inc.*, No. 00 CIV. 6241, 2000 WL 1341400, at *9, (S.D.N.Y. Sept. 15, 2000) (quoting *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 683 (Fed.Cir.1990)), Giantceutical does not explain why this hardship to Mable is outweighed by any harm that Giantceutical might suffer in the absence of preliminary relief, or even specify what that harm would consist of.[8] Instead, it relies on the principle that "the hardship on a patent holder denied an injunction after showing a strong likelihood of success consists of an 'equally serious delay in the exercise of his limited-in-time property right to exclude.'" *Id.* (quoting *Illinois Tool*, 906 F.2d at 683). Because Giantceutical has not shown a strong likelihood of success on the merits, this principle does not support a finding that the balance of hardships weighs in Giantceutical's favor.

*4. The Public Interest*

▇ Finally, Giantceutical has failed to provide any compelling argument that the issuance of an injunction is in the public interest. Giantceutical merely states that, in another case in this district, the court found that "the public interest in the protection of patent rights served to counter-

balance the opposing party's right to compete," [9] (Pl.'s Mem. at 8 (citing *Easter Unlimited*, 2000 WL 1341400, at *10.)), without explaining why that finding applies in the instant case. Although there is a public interest in the protection of patent rights, given Giantceutical's failure to show a likelihood of success on the merits, that interest is outweighed in this case by the public interest in the right to compete. *See Illinois Tool*, 906 F.2d at 684 (upholding trial court's finding that the public interest in protecting patent rights was counterbalanced by the defendant's "continuing right to compete, ... in view of [the plaintiff's] remote showing of likelihood of success in proving infringement at trial." (quotations marks omitted)).

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the motion of plaintiff Giantceutical, Inc. for a preliminary injunction is denied and this action is dismissed on the basis of the failure of plaintiff Giantceutical, Inc. to establish its standing to prosecute this litigation.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

---

8. In support of its claim that it would suffer irreparable harm without a preliminary injunction, Giantceutical states that, as the exclusive licensee for the 872 Patent in the United States, it "has invested substantial amounts of time, energy and money," and that its "distribution of the products, unencumbered by Defendants' infringement, is the only means by which plaintiff can recoup its costs." (Pl.'s Mem. at 7.) Giantceutical does not, however, explain why monetary compen-

sation would not provide a sufficient means by which to recoup its costs.

9. In fact, the court in the case cited by Giantceutical made the opposite finding. The court stated that "the public interest [was] a neutral factor" and that, "[w]hile there is a public interest in the protection of patent rights, this interest is counterbalanced by [the defendant's] continuing right to compete before a trial on the merits can be concluded." *Easter Unlimited*, 2000 WL 1341400, at *10.