# United States Court of Appeals for the Federal Circuit

2008-1269, -1270

TYCO HEALTHCARE GROUP LP
(doing business as United States Surgical, a division of Tyco Healthcare Group LP),

Plaintiff-Appellant,

v.

ETHICON ENDO-SURGERY, INC.,

Defendant-Cross Appellant.


Drew M. Wintringham,III, DLA Piper US LLP, of New York, New York, argued for plaintiff-appellant.  With him on the brief was Mark W. Rueh.

Barbara L. Mullin, Woodcock Washburn LLP, of Philadelphia, Pennsylvania, argued for defendant-cross appellant.  With her on the brief were Dianne B. Elderkin, Richard B. LeBlanc, Steven D. Maslowski, and Ruben H. Munoz.

Appealed from:  United States District Court for the District of Connecticut

Judge Janet Bond Arterton

# United States Court of Appeals for the Federal Circuit

2008-1269, -1270

TYCO HEALTHCARE GROUP LP,
(doing business as United States Surgical, a division of Tyco Healthcare Group LP),

Plaintiff-Appellant,

v.

ETHICON ENDO-SURGERY, INC.,

Defendant-Cross Appellant.

Appeals from the United States District Court for the District of Connecticut in case no. 3:04-CV-1702, Judge Janet Bond Arterton.

_____

DECIDED:  December 7, 2009
_____

Before MICHEL, Chief Judge, NEWMAN and PROST, Circuit Judges.

Opinion of the court filed by Chief Judge MICHEL.  Dissenting opinion filed by Circuit Judge NEWMAN.

MICHEL, Chief Judge.

Tyco Healthcare Group LP ("Tyco Healthcare") appeals the dismissal of its patent infringement suit against Ethicon Endo-Surgery, Inc. ("Ethicon").  The district court dismissed without prejudice the infringement suit because Tyco Healthcare had failed to prove ownership of the asserted patents, and thus lacked standing to sue.  Ethicon cross-appeals, arguing that the dismissal should have been with prejudice.  We affirm the district court's decision to dismiss without prejudice.

## I.  BACKGROUND

The present litigation concerns three patents, presently at issue ("the patents-in-suit"), directed to medical instruments that employ ultrasonic energy to cut and coagulate vessels in surgery.[1]  While the applications for these patents were pending, the respective inventors assigned their rights to either U.S. Surgical Corporation ("USSC") or Misonix.  Misonix had previously granted USSC an exclusive license and the right to sue on any inventions and patents concerning the subject matter of the involved patents.  Thus, as of March 1999, all necessary rights to enforce the patents resided in USSC.

On April 1, 1999, USSC entered into two agreements: a Contribution Agreement and a Settlement Agreement.  The Contribution Agreement was executed by USSC and Kendall LLP.  With the Contribution Agreement, USSC agreed to "assign[], transfer[], and deliver[] to [Kendall] . . . all of the assets, properties, and business," excepting certain "Excluded Assets," existing as of April 1, 1999.  The transferred assets included patents, except "[a]ny and all patents and patent applications relating to any pending litigation involving USSC," as set forth by the Excluded Assets provision.  Section 4.21 of the Contribution Agreement stated in part that "there are no actions pending or threatened by or against, or involving USSC," except "as set forth on Schedule 4.21."  Shortly after the execution of the Contribution Agreement, Kendall changed its name to Tyco Healthcare.  Thus, any rights transferred to Kendall via the Contribution Agreement are now held by Tyco Healthcare.

---

[1]  U.S. Patent Nos. 6,063,050; 6,468,286; and 6,682,544.  A fourth patent, U.S. Patent No. 6,280,407, was asserted in the complaint.

On the same day the Contribution Agreement was signed, USSC and Ethicon executed the Settlement Agreement, which purported to resolve "five pending patent litigations" and several interference proceedings between the two companies. The Settlement Agreement granted immunity from infringement liability to certain then-existing products made or sold by Ethicon. USSC and Ethicon also agreed to dismiss with prejudice the litigations listed in the agreement. Presently, both Ethicon and Tyco Healthcare concur that the type of products accused of infringement in the current suit are the same type of products immunized by the Settlement Agreement. Both parties also agree that the current products accused of infringement are not immunized because they were made or sold after April 1, 1999, the effective date of the Settlement Agreement.

In October 2004, Tyco Healthcare commenced the present action against Ethicon, claiming infringement of the patents-in-suit. After discovery, a trial was held in December 2008 before Judge Arterton. Tyco Healthcare called its first witness, Mr. Steven Amelio, a Tyco Healthcare vice-president and its Rule 30(b)(6) witness. During Mr. Amelio's cross-examination, Ethicon challenged Tyco Healthcare's asserted ownership of the patents for the first time.

The following day, a Saturday, Tyco Healthcare produced the Contribution Agreement, which allegedly documents the 1999 transfer of title of the patents from USSC to Kendall (now named Tyco Healthcare). On the Monday, Mr. Amelio was recalled as a witness and testified that ownership of the patents-in-suit was transferred from USSC to Kendall.

At the close of Tyco Healthcare's case-in-chief, Ethicon moved for judgment as a matter of law on the issue of standing, contending that Tyco Healthcare did not own the patents-in-suit. The district court held Ethicon's motion in reserve but ultimately granted it and dismissed the case without prejudice.

Tyco Healthcare timely appealed, and Ethicon timely cross-appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

A plaintiff generally has the burden of proving standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). "[T]o assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title at the inception of the lawsuit." Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003).

The ownership of the patents-in-suit here rests, in part, on the correct interpretation of a particular phrase of the Contribution Agreement. Under Delaware law, which governs the Contribution Agreement, "the role of a court [when interpreting a contract] is to effectuate the parties' intent." Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006).

The contractual phrase in dispute is "related to pending litigation." If the patents-in-suit are "related to" any litigation involving USSC pending at the time the Contribution Agreement became effective, then the patents were not transferred to Kendall (and thus Tyco Healthcare) but stayed with USSC. If the patents were not related to the pending litigation, they are beyond the scope of the "Excluded Assets" provision and therefore Kendall received ownership of the patents.

The contract gives no explicit definition of the phrase "related to pending litigation." Tyco Healthcare argues that the phrase includes only patents asserted in a pending litigation or patent applications in the same family as an asserted patent. But that view is too narrow based on the language of the Contribution Agreement. In general, "related to" means one thing has some relationship or connection to another thing. See Random House Webster's Unabridged Dictionary 1626 (1998) (defining "related" to mean "associated, connected" and "allied by nature, origin, kinship, marriage, etc."); see also Lorillard, 903 A.2d at 740 ("When a term's definition is not altered or has no gloss in the [relevant] industry it should be construed in accordance with its ordinary dictionary meaning.") (quotation marks omitted). In legal parlance, "related" takes meanings with similar breadth. See Black's Law Dictionary 1288 (6th ed. 1991) (defining "related" as "[s]tanding in relation; connected; allied; akin"); see also 28 U.S.C. § 1367(a) (granting supplemental jurisdiction over claims "so related to" a claim based on original jurisdiction); Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 390 (2d Cir. 2002) ("Possession of a famous or strong mark entitles the possessor to broad protection for related goods."). In many patent contexts, the term "related" adopts a similarly encompassing meaning. See, e.g., In re Fallaux, 564 F.3d 1313, 1315 (Fed. Cir. 2009) (discussing related patent applications in the obviousness-type double patenting context); Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1344 (Fed. Cir. 2007) (explaining that "related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents").

Of course, "related to" can be used by contracting parties in a narrower sense. Here, however, Tyco Healthcare directs us to nothing in the Contribution Agreement that suggests the contracting parties intended anything other than the ordinarily broad understanding of the phrase "related to pending litigation." Additionally, the other subsections of the Excluded Assets provision employ the term "related" in a seemingly broad manner. The Excluded Assets provision, therefore, covers any patents or patent applications in the same family or so related in subject matter that they were or could have been reasonably asserted in or affected by a litigation pending at the time the Contribution Agreement was executed.

Based on our interpretation of the Contribution Agreement, Tyco Healthcare must prove that the patents-in-suit could not have been asserted in or affected by any litigation pending as of April 1, 1999. As to what litigation was pending when the Contribution Agreement was signed, the record before us is silent. Tyco Healthcare offers nothing that would allow the court to determine which litigations were pending when the Contribution Agreement was signed.

On its face, the Contribution Agreement purports to answer the question of whether any USSC litigation was pending at the time. Section 4.21 describes pending litigation:

> Except as set forth on Schedule 4.21 hereto, there are no actions pending or threatened by or against, or involving USSC (with respect to the Business only) or any directors, officers, or employees thereof in their capacity as such or which question or challenge the validity of this Agreement, or any action taken or to be taken by USSC pursuant to this Agreement in connection with the transactions contemplated hereby or thereby, and to the knowledge of USSC, there is no valid basis for any such Action.

Thus, Schedule 4.21 was to list any USSC litigations then pending or threatened, but Schedule 4.21 is missing. Or it simply never existed, as Tyco Healthcare contends on appeal. If the latter, that seems to be a significant oversight since Tyco Healthcare concedes that USSC litigation was pending on April 1, 1999. J.A. 2027. Either way, Tyco Healthcare is in the unenviable position of having to prove the patents-in-suit are not related to particular USSC litigation without having the identity of that litigation available in the record.

The district court seemingly viewed the Settlement Agreement as dispositive of whether the patents-in-suit were "related to" pending litigation. The Settlement Agreement, however, appears to cover more subject matter than what was involved in pending USSC litigation. By its own terms, the Settlement Agreement encompasses more. The Settlement Agreement includes resolving "unasserted claims of patent infringement," which appear distinct from the five litigations recited in the agreement. Even with its broader scope, the Settlement Agreement may still inform the court as to whether the patents-in-suit are "related to" a particular litigation pending at the time. A court may reasonably conclude that USSC included one or more of the unasserted infringement claims in the Settlement Agreement because USSC thought those unasserted claims to be "related to" pending litigation. Without knowledge of the pending litigations, however, it is not possible to ascertain whether the patents-in-suit are "related to" any relevant USSC litigation.

We also note that the Settlement Agreement appears to distinguish between "litigation" and "interference proceedings." The Contribution Agreement, on the other hand, seems to refer to litigation more broadly and may encompass a broader class of

legal proceedings. Whether this has any bearing on the ownership of the patents was not addressed by the district court's analysis.

In sum, Tyco Healthcare bore the burden of proving that the patents-in-suit are not "related to" any litigation pending at the time the Contribution Agreement was executed. Tyco Healthcare failed to do this. Therefore, the district court correctly dismissed the suit.

Turning to the nature of the dismissal, Ethicon feels aggrieved because it had asked the district court to dismiss the case with prejudice. "A dismissal with prejudice bars a subsequent action between the same parties or their privies on the same claim, but a dismissal without prejudice, although it constitutes a final termination of the first action, does not bar a second suit." H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed. Cir. 2002). We have explained that "[o]rdinarily, dismissal for lack of standing is without prejudice." Fieldturf, Inc. v. Sw. Recreational Indus., Inc., 357 F.3d 1266, 1269 (Fed. Cir. 2004). "On occasion, however, a dismissal with prejudice is appropriate, especially where it is plainly unlikely that the plaintiff will be able to cure the standing problem." Id. Within the sound discretion of the district court is the decision of whether dismissal is with or without prejudice. Wynder v. McMahon, 360 F.3d 73, 76 (2d Cir. 2004) (reviewing "Rule 41(b) dismissals for abuse of discretion").

Ethicon has not shown that Judge Arterton abused her discretion. As best we can tell, Tyco Healthcare may become able to show that it owned the asserted patents. Alternatively, Tyco Healthcare may be able to obtain ownership of the patents. Further, given that the ownership issue was not identified to the court as an issue to be litigated during trial and was first explicitly raised by Ethicon during Mr. Amelio's cross-

examination, we do not perceive any undue prejudice to Ethicon. Should Tyco Healthcare be able to cure the ownership deficiency, most if not all the evidence, testimony, and rulings developed during trial should be applicable to a subsequent proceeding between the parties.

## III. CONCLUSION

For the foregoing reasons, the district court's dismissal without prejudice is affirmed.

AFFIRMED

# United States Court of Appeals for the Federal Circuit

2008-1269, -1270

TYCO HEALTHCARE GROUP LP
(doing business as United States Surgical, a division of Tyco Healthcare Group LP)

Plaintiff-Appellant,

v.

ETHICON ENDO-SURGERY, INC.,

Defendant-Cross Appellant.

Appeal from the United States District Court for the District of Connecticut in Case No. 3:04-CV-1702, Judge Janet Bond Arterton.

NEWMAN, Circuit Judge, dissenting.

The question before the court is whether Tyco Healthcare Group LP was the owner of the patents here in suit on October 8, 2004, the date the complaint was filed in this case. The answer turns on whether an intra-company transfer document called a "Contribution Agreement," dated April 1, 1999 between U.S. Surgical Corp. (USSC) and Tyco's nominal predecessor The Kendall Company LP, included USSC's rights in the patent application that led to the three patents here at issue. (The Kendall Company changed its name to Tyco Healthcare Group; for convenience I use "Tyco" in this discussion.)

The Contribution Agreement implemented a Limited Partnership between USSC and Tyco. The Agreement transferred USSC's therein-defined Business, including all tangible and intangible property associated with the Business, with certain defined exceptions such as "any and all patents and applications relating to any pending litigation involving USSC." The district court, relying on a contemporaneous Settlement Agreement between USSC and Ethicon, held that the patents here in suit were "relating to any pending litigation" under the aforementioned exception. The district court reasoned that USSC's entire patent portfolio was "related," because the Settlement Agreement granted immunity from infringement to certain defined "Immune Products." However, it is not disputed that the patents here in suit do not relate in any way to those Immune Products. Thus the panel majority does not adopt the district court's reasoning.

However, my colleagues instead find a new and different ground for the same result, upon which this court misconstrues the agreements. My colleagues ignore the evidence, and now affirm the dismissal on a ground not asserted against Tyco, to which Tyco had no opportunity to respond, and that is on its face incorrect. I respectfully dissent.

DISCUSSION

The relevant provisions of the Contribution Agreement concern the patent rights contributed to the partnership by USSC, as follows:

1.1 Contribution of the Assets.

(a) Subject to the terms and conditions of this Agreement, USSC hereby assigns, transfers, and delivers to the Partnership . . . all of the assets, properties, and business (excepting only the "Excluded Assets," as defined in Section 1.2 of this Agreement) of every kind and description; wherever located; real, personal, or mixed; tangible or intangible; owned or held; or used primarily in the conduct of the Business as the same shall

exist on the Contribution Date (collectively, the "Assets"), and including, without limitation, all right, title, and interest of USSC in, to, and under:

. . . .

(iii) Those patents . . . and other intangible property . . . and any applications for the same, used primarily in the Business . . . (collectively, the "Intangible Property") . . . .

The Excluded Assets are defined in the Agreement as follows, to the extent pertinent to this case:

1.2 Excluded Assets.

(a) [USSC] expressly understands and agrees that there shall be excluded from the Assets any assets not used in connection with the Business and the following assets and properties of USSC which are used in connection with the Business:

. . . .

(ix) Any and all patents and patent applications relating to any pending litigation involving USSC. . . .

The court elaborates on the contract, to find that "[t]he Excluded Assets provision, therefore, covers any patents or patent applications in the same family or so related in subject matter that they were or could have been reasonably asserted in or affected by a litigation pending at the time the Contribution Agreement was executed." Maj. op. at 6. However, even with this broad interpretation, the Excluded Assets provision does not cover the patents here in suit, for it is undisputed that neither they nor any patent in the same family were affected by litigation pending as of April 1, 1999. Nonetheless, despite the lack of any factual dispute on this aspect, the court now rules that Tyco did not meet its "burden" by showing that the patents in suit could not have been "reasonably asserted in or affected" by any other, unidentified litigation. This ruling is beyond what Ethicon argued, beyond the reasoning applied by the district court, and contrary to the unrebutted evidence. There was no suggestion of any such litigation.

***The district court's ruling***

The district court relied on a Settlement Agreement between USSC and Ethicon whereby, effective April 1, 1999, USSC and Ethicon settled all litigation then pending between them as to the subject matter defined in the Agreement, and granted reciprocal immunity as to specified products that were then made and sold. The district court held that "[the Settlement Agreement] bear[s] directly on who owns the patents in this case," deeming it relevant to the Excluded Assets provision of the Contribution Agreement. The district court ruled that the patents here in suit had not been transferred to Tyco under the Contribution Agreement because these patents were "related" to the USSC/Ethicon litigation that the Settlement Agreement resolved.

There are several flaws in the path by which the district court arrived at this conclusion. There was no evidence contrary to that of Tyco's Rule 30(b)(6) witness, Vice President Stephen Amelio. He was asked:

> And is it still your testimony today that Tyco Healthcare Group LP holds title to the patents-in-suit as a result of a transfer from U.S. Surgical Corporation to the Kendall Company, which subsequently changed its name to Tyco Healthcare Group LP?

Mr. Amelio responded, "Yes, it is." Tyco's counsel asked;

> So is it correct that the patent applications were not Excluded Assets under Section 1.2(a)(ix) of the Contribution Agreement?

Mr. Amelio responded, "That is correct." He testified that none of the three patents nor the applications that gave rise to those patents were "relating to any pending litigation involving USSC," the words of the Contribution Agreement. He pointed out that the patents in suit had not even issued at the time of the Contribution Agreement.[1]

---

[1] The application that led to U.S. Patent No. 6,063,050 was filed on August 14, 1997, and issued on May 16, 2000. The other two patents are in a chain of

On cross-examination, Ethicon's counsel proposed to Mr. Amelio that the patents here in suit were "related" to the litigation between USSC and Ethicon that was settled on April 1, 1999, pointing to the litigations named in the Settlement Agreement and the provision that immunized certain existing Ethicon products from future suit by USSC. Ethicon's counsel asked Mr. Amelio whether these aspects of the Settlement Agreement showed that the patents in suit were "expressly excluded" from the Contribution Agreement. Mr. Amelio responded: "I do not believe that to be correct." Mr. Amelio directly disagreed with Ethicon's proposed interpretation of the Contribution Agreement. Ethicon presented no contrary evidence, testimonial or documentary, in support of its proposed meaning. In contrast, the parties to the Contribution Agreement agreed as to its meaning.

The litigations identified in the Settlement Agreement were five district court cases, two in the United States District Court for the District of Connecticut and one each in the Eastern District of Virginia, the Southern District of Ohio (Western Division), and the Southern District of Florida. Three pending interference proceedings were also identified, by name and number. Ethicon never asserted that any of these prior litigations or interferences related to the patents here in suit, or the applications that preceded them, or any family member of these patents. Ethicon has also never disputed that the subject matter of the patents here in suit, concerning surgical devices for ultrasonic cutting and coagulation of blood vessels, is not related to the subject matter of the settled litigations of April 1, 1999, which concerned surgical staples and trocars. Ethicon's theory was not that any of these litigations themselves "related" to the continuations of the '050 patent, and issued on applications filed on September 6, 2001 and September 11, 2002.

patents now in suit; rather, Ethicon postulated that all future USSC patents could be encumbered by the grant of immunity, on the possibility that they might relate to any of the Immune Products identified in the Settlement Agreement.

The district court accepted Ethicon's theory. It is not disputed, however, that the patents here in suit have no relation to these Immune Products. The panel majority correctly rejected this reasoning, explaining that as construed by the district court "[t]he Settlement Agreement . . . appears to cover more subject matter than was involved in pending USSC litigation." Maj. op. at 7. I agree that the district court adopted an over-broad interpretation of the term "relating" in the Contribution Agreement. And even on the district court's interpretation, Tyco correctly points out that the continuing immunity under the Settlement Agreement has no relation to USSC's transfer of ownership of its patent assets, for USSC and Ethicon expressly agreed that any assignee would be bound to respect such immunity.

However, my colleagues have adopted a new theory, whereby this court now excludes the patents here in suit from transfer under the Contribution Agreement.

***This court's new theory***

The court now goes outside of any provision of any contract, and proposes that "[a] court may reasonably conclude that USSC included one or more of the unasserted infringement claims in the Settlement Agreement because USSC thought those unasserted claims to be 'related to' pending litigation." Maj. op. at 7. I repeat, we have been told of no unasserted claims, and no witness or advocate has suggested otherwise. It is indeed obscure as to how "a court could reasonably conclude" that nonexistent unasserted claims entrained these later-granted patents on unrelated

2008-1269,-1270                                        6

subject matter. This theory was not mentioned by the district court and not pressed by any party. Tyco has had no opportunity to respond.

The aspect that appears to have diverted my colleagues is that the Contribution Agreement did not include a schedule that was referred to in Section 4.21 of the Agreement:

> 4.21 Litigation. Except as set forth on Schedule 4.21 hereto, there are no actions pending or threatened by or against, or involving USSC (with respect to the Business only) or any directors, officers, or employees thereof in their capacity as such or which question or challenge the validity of this Agreement, or any action taken or to be taken by USSC pursuant to this Agreement in connection with the transactions contemplated hereby or thereby, and to the knowledge of USSC, there is no valid basis for any such Action.

Ethicon's counsel asked Mr. Amelio if the absence of Schedule 4.21 rendered the Contribution Agreement incomplete. Mr. Amelio answered, "I don't know if that's the case. It could be there is no pending litigations and that's why there is no schedule." My colleagues nonetheless find that "[a]s to what litigation was pending when the Contribution Agreement was signed, the record before us is silent." Maj. op. at 6. That is incorrect.

The record is extensive concerning the Settlement Agreement. Ethicon presented Mr. Amelio with documents showing that the litigations listed in the Settlement Agreement were not formally dismissed until several days after April 1, 1999; to which Mr. Amelio responded, "I'm not sure if they're considered pending or settled litigation as a result of the settlement." Whether those litigations were properly considered "pending" on the day of settlement is irrelevant, however, because those litigations did not relate to the patents here in suit. Ethicon did not suggest that there

was any other litigation within the scope of Section 4.21, although pending litigation is a matter of public record.

My colleagues deem it irrelevant that the patents here in suit do not relate to any Immune Product or any other subject of the Settlement Agreement. My colleagues do not mention the uncontradicted testimony of Tyco's Rule 30(b)(6) witness. Instead, the court now requires Tyco to have established that there was no pending litigation of any sort on April 1, 1999, to avoid the result whereby the absent Schedule 4.21 negates the transfer of every USSC patent and application under the Contribution Agreement. Ethicon did not identify any litigation beyond that listed in the Settlement Agreement, despite every opportunity to discover and produce such evidence. Nonetheless, my colleagues hold that the absence of Schedule 4.21, without more, removes these later-granted patents from transfer under the Contribution Agreement.

"The cardinal principle of contract interpretation is that the intention of the parties must prevail unless it is inconsistent with some established rule of law." 11 Williston on Contracts §32:2 (4th ed. 2009); see also King v. Dep't of Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("The paramount focus is the intention of the parties at the time of contracting; that intention controls in any subsequent dispute."); Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006) ("When interpreting a contract, the role of a court is to effectuate the parties' intent."). As a corollary, when the contracting parties' intent is collaterally attacked by a stranger to that contract, the attacker bears the burden of coming forward with some evidence of its contrary position. Ethicon provided neither documentary evidence nor opinion testimony in support of its notion that Tyco and USSC intended to exclude the patents here in suit from the Contribution

Agreement. And even if the burden of proof as to contract interpretation were deemed to lie with Tyco, as my colleagues suggest, this burden was met, for Tyco's witness testified, without contradiction, that there was no pending litigation on April 1, 1999 relating to the three patents here in suit.

Nonetheless, the court holds that the absence of Schedule 4.21 prevents Tyco from establishing that the patents in suit were not related to any then-pending litigation. My colleagues require that "Tyco Healthcare must prove that the patents-in-suit <u>could not</u> have been asserted in or affected by any litigation pending as of April 1, 1999." Maj. Op. at 6 (emphasis added). If such proof were indeed required—as I doubt—this criterion was met. The undisputed testimony and documentary evidence of the terms of the Contribution Agreement, the explicit terms of the Settlement Agreement, and the unchallenged contractual intent of the parties to each of these agreements, require the conclusion that USSC patents and applications that were not related to then-pending litigation were transferred to Tyco. There was no contrary evidence. Wherever the placement of the burden of proof, Tyco established that these patents were not within the Excluded Assets of the Contribution Agreement.

The court's contrary reading produces the absurd result whereby no USSC patent, indeed none of the assets transferred by the Contribution Agreement, can be deemed to have been transferred, merely because Schedule 4.21, listing public information, was missing. That is not a tolerable reading of the contract, for it renders the contract ineffective for its purpose and defeats the plain intent of the contracting parties. Tyco explains that the contracting parties never would have agreed to transfer USSC's business assets without also transferring the patents and other intellectual

property rights that protected the transferee's use of those assets. The contract text and intent, undisputed by the contracting parties and not seriously challenged by Ethicon, cannot support the conclusion reached by my colleagues. See NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous."); NAMA Holdings, LLC v. World Market Center Venture, LLC, 948 A.2d 411, 419 (Del. Ch. 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court.").

In sum, Tyco established, and Ethicon does not dispute, that the patents here in suit were not related to any litigation pending on April 1, 1999, whether or not the settled USSC/Ethicon litigation is deemed to have remained pending on the settlement contract's date. It is not disputed that the subject matter here in suit is not related to any subject matter then in litigation, and that the now-asserted patents are not related to any of the products for which immunity was granted in the Settlement Agreement. Thus it is concluded that these patents were transferred by USSC to Tyco in accordance with the transfer in the Contribution Agreement. On this conclusion, the court's denial of standing is without support in law and fact. I respectfully dissent.