MICHEL, Chief Judge.
Tyco Healthcare Group LP (“Tyco Healthcare”) appeals the dismissal of its patent infringement suit against Ethicon Endo-Surgery, Inc. (“Ethicon”). The district court dismissed without prejudice the infringement suit because Tyco Healthcare had failed to prove ownership of the asserted patents, and thus lacked standing to sue. Ethicon cross-appeals, arguing that the dismissal should have been with prejudice. We affirm the district court’s decision to dismiss without prejudice.
I. BACKGROUND
The present litigation concerns three patents, presently at issue (“the patents-in-suit”), directed to medical instruments that employ ultrasonic energy to cut and coagulate vessels in surgery.[1] While the applications for these patents were pending, the respective inventors assigned their rights to either U.S. Surgical Corporation (“USSC”) or Misonix. Misonix had previously granted USSC an exclusive license and the right to sue on any inventions and patents concerning the subject matter of the involved patents. Thus, as of March 1999, all necessary rights to enforce the patents resided in USSC.
On April 1,1999, USSC entered into two agreements: a Contribution Agreement and a Settlement Agreement. The Contribution Agreement was executed by USSC and Kendall LLP. With the Contribution Agreement, USSC agreed to “assignf], transferf ], and deliver[ ] to [Kendall] ... all of the assets, properties, and business,” excepting certain “Excluded Assets,” existing as of April 1, 1999. The transferred assets included patents, except “[a]ny and all patents and patent applications relating to any pending litigation involving USSC,” as set forth by the Excluded Assets provision. Section 4.21 of the Contribution Agreement stated in part that “there are no actions pending or threatened by or against, or involving USSC,” except “as set forth on Schedule 4.21.” Shortly after the execution of the Contribution Agreement, Kendall changed its name to Tyco Healthcare. Thus, any rights transferred to Kendall via the Contribution Agreement are now held by Tyco Healthcare.
On the same day the Contribution Agreement was signed, USSC and Ethicon executed the Settlement Agreement, which purported to resolve “five pending patent litigations” and several interference proceedings between the two companies. The Settlement Agreement granted immunity from infringement liability to certain then-existing products made or sold by Ethicon. USSC and Ethicon also agreed to dismiss with prejudice the litigations listed in the agreement. Presently, both Ethicon and Tyco Healthcare concur that the type of products accused of infringement in the current suit are the same type of products immunized by the Settlement Agreement. Both parties also agree that the current products accused of infringement are not immunized because they were made or sold after April 1, 1999, the effective date of the Settlement Agreement.
In October 2004, Tyco Healthcare commenced the present action against Ethicon, claiming infringement of the patents-in-suit. After discovery, a trial was held in December 2008 before Judge Arterton. Tyco Healthcare called its first witness, Mr. Steven Amelio, a Tyco Healthcare *1378 vice-president and its Rule 30(b)(6) witness. During Mr. Amelio’s cross-examination, Ethicon challenged Tyco Healthcare’s asserted ownership of the patents for the first time.
The following day, a Saturday, Tyco Healthcare produced the Contribution Agreement, which allegedly documents the 1999 transfer of title of the patents from USSC to Kendall (now named Tyco Healthcare). On the Monday, Mr. Amelio was recalled as a witness and testified that ownership of the patents-in-suit was transferred from USSC to Kendall.
At the close of Tyco Healthcare’s casein-chief, Ethicon moved for judgment as a matter of law on the issue of standing, contending that Tyco Healthcare did not own the patents-in-suit. The district court held Ethicon’s motion in reserve but ultimately granted it and dismissed the case without prejudice.
Tyco Healthcare timely appealed, and Ethicon timely cross-appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II. DISCUSSION
A plaintiff generally has the burden of proving standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). “[T]o assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title at the inception of the lawsuit.” Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed.Cir.2003).
The ownership of the patents-in-suit here rests, in part, on the correct interpretation of a particular phrase of the Contribution Agreement. Under Delaware law, which governs the Contribution Agreement, “the role of a court [when interpreting a contract] is to effectuate the parties’ intent.” Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del.2006).
The contractual phrase in dispute is “related to pending litigation.” If the patents-in-suit are “related to” any litigation involving USSC pending at the time the Contribution Agreement became effective, then the patents were not transferred to Kendall (and thus Tyco Healthcare) but stayed with USSC. If the patents were not related to the pending litigation, they are beyond the scope of the “Excluded Assets” provision and therefore Kendall received ownership of the patents.
The contract gives no explicit definition of the phrase “related to pending litigation.” Tyco Healthcare argues that the phrase includes only patents asserted in a pending litigation or patent applications in the same family as an asserted patent. But that view is too narrow based on the language of the Contribution Agreement. In general, “related to” means one thing has some relationship or connection to another thing. See Random House Webster’s Unabridged Dictionary 1626 (1998) (defining “related” to mean “associated, connected” and “allied by nature, origin, kinship, marriage, etc.”); see also Lorillard, 903 A.2d at 740 (“When a term’s definition is not altered or has no gloss in the [relevant] industry it should be construed in accordance with its ordinary dictionary meaning.”) (quotation marks omitted). In legal parlance, “related” takes meanings with similar breadth. See Black’s Law Dictionary 1288 (6th ed. 1991) (defining “related” as “[standing in relation; connected; allied; akin”); see also 28 U.S.C. § 1367(a) (granting supplemental jurisdiction over claims “so related to” a claim based on original jurisdiction); Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 390 (2d Cir.2002) (“Possession of a famous or strong mark entitles the possessor to *1379 broad protection for related goods.”). In many patent contexts, the term “related” adopts a similarly encompassing meaning. See, e.g., In re Fallaux, 564 F.3d 1313, 1315 (Fed.Cir.2009) (discussing related patent applications in the obviousness-type double patenting context); Teva Pharms. USA Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1344 (Fed.Cir.2007) (explaining that “related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents”).
Of course, “related to” can be used by contracting parties in a narrower sense. Here, however, Tyco Healthcare directs us to nothing in the Contribution Agreement that suggests the contracting parties intended anything other than the ordinarily broad understanding of the phrase “related to pending litigation.” Additionally, the other subsections of the Excluded Assets provision employ the term “related” in a seemingly broad manner. The Excluded Assets provision, therefore, covers any patents or patent applications in the same family or so related in subject matter that they were or could have been reasonably asserted in or affected by a litigation pending at the time the Contribution Agreement was executed.
Based on our interpretation of the Contribution Agreement, Tyco Healthcare must prove that the patents-in-suit could not have been asserted in or affected by any litigation pending as of April 1, 1999. As to what litigation was pending when the Contribution Agreement was signed, the record before us is silent. Tyco Healthcare offers nothing that would allow the court to determine which litigations were pending when the Contribution Agreement was signed.
On its face, the Contribution Agreement purports to answer the question of whether any USSC litigation was pending at the time. Section 4.21 describes pending litigation:
Except as set forth on Schedule 4.21 hereto, there are no actions pending or threatened by or against, or involving USSC (with respect to the Business only) or any directors, officers, or employees thereof in their capacity as such or which question or challenge the validity of this Agreement, or any action taken or to be taken by USSC pursuant to this Agreement in connection with the transactions contemplated hereby or thereby, and to the knowledge of USSC, there is no valid basis for any such Action.
Thus, Schedule 4.21 was to list any USSC litigations then pending or threatened, but Schedule 4.21 is missing. Or it simply never existed, as Tyco Healthcare contends on appeal. If the latter, that seems to be a significant oversight since Tyco Healthcare concedes that USSC litigation was pending on April 1, 1999. J.A. 2027. Either way, Tyco Healthcare is in the unenviable position of having to prove the patents-in-suit are not related to particular USSC litigation without having the identity of that litigation available in the record.
The district court seemingly viewed the Settlement Agreement as dispositive of whether the patents-in-suit were “related to” pending litigation. The Settlement Agreement, however, appears to cover more subject matter than what was involved in pending USSC litigation. By its own terms, the Settlement Agreement encompasses more. The Settlement Agreement includes resolving “unasserted claims of patent infringement,” which appear distinct from the five litigations recited in the agreement. Even with its broader scope, the Settlement Agreement may still inform the court as to whether the patents-in-suit are “related to” a particular litigation *1380 pending at the time. A court may reasonably conclude that USSC included one or more of the unasserted infringement claims in the Settlement Agreement because USSC thought those unasserted claims to be “related to” pending litigation. Without knowledge of the pending litigations, however, it is not possible to ascertain whether the patents-in-suit are “related to” any relevant USSC litigation.
We also note that the Settlement Agreement appears to distinguish between “litigation” and “interference proceedings.” The Contribution Agreement, on the other hand, seems to refer to litigation more broadly and may encompass a broader class of legal proceedings. Whether this has any bearing on the ownership of the patents was not addressed by the district court’s analysis.
In sum, Tyco Healthcare bore the burden of proving that the patents-in-suit are not “related to” any litigation pending at the time the Contribution Agreement was executed. Tyco Healthcare failed to do this. Therefore, the district court correctly dismissed the suit.
Turning to the nature of the dismissal, Ethicon feels aggrieved because it had asked the district court to dismiss the case with prejudice. “A dismissal with prejudice bars a subsequent action between the same parties or their privies on the same claim, but a dismissal without prejudice, although it constitutes a final termination of the first action, does not bar a second suit.” H.R. Techs., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1384 (Fed.Cir.2002). We have explained that “[o]rdinarily, dismissal for lack of standing is without prejudice.” Fieldturf, Inc. v. Sw. Recreational Indus., Inc., 357 F.3d 1266, 1269 (Fed.Cir.2004). “On occasion, however, a dismissal with prejudice is appropriate, especially where it is plainly unlikely that the plaintiff will be able to cure the standing problem.” Id. Within the sound discretion of the district court is the decision of whether dismissal is with or without prejudice. Wynder v. McMahon, 360 F.3d 73, 76 (2d Cir.2004) (reviewing “Rule 41(b) dismissals for abuse of discretion”).
Ethicon has not shown that Judge Arterton abused her discretion. As best we can tell, Tyco Healthcare may become able to show that it owned the asserted patents. Alternatively, Tyco Healthcare may be able to obtain ownership of the patents. Further, given that the ownership issue was not identified to the court as an issue to be litigated during trial and was first explicitly raised by Ethicon during Mr. Amelio’s cross-examination, we do not perceive any undue prejudice to Ethicon. Should Tyco Healthcare be able to cure the ownership deficiency, most if not all the evidence, testimony, and rulings developed during trial should be applicable to a subsequent proceeding between the parties.
III. CONCLUSION
For the foregoing reasons, the district court’s dismissal without prejudice is affirmed.

AFFIRMED

. U.S. Patent Nos. 6,063,050; 6,468,286; and 6,682,544. A fourth patent, U.S. Patent No. 6,280,407, was asserted in the complaint.