ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
ABB Enterprise Software, Inc., f/k/a Ventyx ) ASBCA No. 60314
)
Under Contract No. N00174-05-C-0038 )

APPEARANCE FOR THE APPELLANT: Jeanne A. Anderson, Esq.
Washington, DC

APPEARANCES FOR THE GOVERNMENT: Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Henry Karp, Esq.
Senior Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE PROUTY ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Through the pending motion to dismiss in this case, we are presented with a question regarding the scope of our jurisdiction pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (CDA), to wit: what constitutes a dispute "arising under or related to" a CDA contract. Here, the dispute is centered upon whether the government violated a certain software license agreement that it obtained through a CDA contract. Reading the definition of "related to" broadly, as we are instructed by binding precedent, we hold that we possess subject matter jurisdiction to consider this appeal.

## JURISDICTIONAL FACTS

For purposes of this motion, the pertinent facts are relatively few and undisputed.[1] The contracts apparently at issue – Nos. N00174-04-M-0272 (contract 272) and N00174-05-C-0038 (contract 038)[2] – were between the United States Navy (Navy) and

---

[1] As will be discussed later in this opinion, despite the government initially characterizing this motion as being brought pursuant to FED. R. CIV. P. 12(b)(6) (which, technically, does not apply to proceedings before the Board) (see gov't mot. at 8), it is actually better characterized as analogous to a 12(b)(1) motion because it is a challenge to our jurisdiction. The Board may consider evidence outside of the pleadings in a jurisdictional motion. See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947).

[2] Appellant only filed a claim upon contract 038, and its complaint only refers to a breach of contract 038, although it unhelpfully captions its appeal as one involving both contracts. Because we do not possess jurisdiction over claims not first submitted to the contracting officer, see Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc), we construe this appeal to only apply to the claim

appellant's predecessor, Tech-Assist, Inc. (Tech-Assist) (gov't mot., UF ¶¶ 1, 9).[3] The two contracts were executed on 29 September 2004 and 21 September 2005, respectively (*id.*). They were similar, with the purpose of each contract being to obtain from Tech-Assist a number of Electronic Shift Operations Management Systems (eSOMS) clearance and database software modules (*id.*). The contracts also expressly required Tech-Assist to provide to the Navy licenses to use the software (R4, tab 1 at 3-5, 15, tab 3 at 24).[4]

The contracts utilized the standard Federal Acquisition Regulation (FAR) clause for the purchase of commercial items (here, the software), FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (OCT 2003) (R4, tab 1 at 5-9, tab 3 at 28-31). Contract 038 (but not contract 272) also included a Navy-generated addendum to this clause, which is specific for the acquisition of software. The addendum was labelled clause HQ C-2-0011, COMPUTER SOFTWARE AND/OR COMPUTER DATABASE(S) DELIVERED TO AND/OR RECEIVED FROM THE GOVERNMENT (NAVSEA) (NOV 1996). (R4, tab 3 at 32-33) Paragraph (c) of this addendum included a provision requiring that any licenses be "perpetual" or "nearly perpetual" (R4, tab 3 at 33). Paragraph (d) of the addendum prohibited the use of copy protection devices or systems on the software delivered under the contract, but noted that "[t]his does not prohibit license agreements from specifying the maximum amount of copies that can be made" (*id.*).

On 5 October 2005, the Navy executed a license agreement (previously signed by Tech-Assist) for 268 copies of the eSOMS software (R4, tab 4 at 42, 50). This license agreement did not explicitly reference either contract, nor was it incorporated into either of the two contracts (gov't mot., UF ¶¶ 18, 22). Nevertheless, there is ample evidence in the record, including the contracting officer's final decision that is appealed in this case, that the license agreement was made to effect the purchase of software set forth in contract 038 and, perhaps, other Navy contracts with Tech-Assist (*see* R4, tab 9 at 59 (according to a government official, "[a]s part of [contract 038] the Government entered into a Master Software License Agreement"), tab 20 at 172-73).

In 2011, Tech-Assist's successor-in-interest, Ventyx, Inc. (Ventyx), contacted the Navy to complain that the Navy had utilized multiple copies of the eSOMS software in some locations in alleged violation of the license agreement (R4, tab 7). On 19 January 2012, the Navy responded to further correspondence from Ventyx by sending it a letter denying that it was in violation of the license agreement, but stating that any disputes would need to be resolved under the CDA (R4, tab 9). Extensive back and forth between the parties ensued (*see* R4, tabs 10-16), culminating in a 28 June 2013 letter from a Navy attorney to Ventyx's general counsel, suggesting that Ventyx file a CDA claim if it

---

submitted upon contract 038 to the contracting officer. We express no opinion here regarding the implications, if any, of this limitation.

[3] "UF" refers to an "undisputed fact" set forth in the government's motion to dismiss, which we cite freely since we are ruling against the government here.

[4] Rule 4 page citations are to the consecutively-numbered pages.

2

wished to pursue the matter further (R4, tab 17 at 141). On 6 February 2015, Ventyx, in fact, filed a claim on contract 038 with the contracting officer pursuant to the CDA (R4, tab 17 at 90). The contracting officer denied the claim on 14 August 2015, basing her decision on the notion that the dispute over the license agreement was not a CDA dispute (R4, tab 20 at 173-74). ABB Enterprise Software, Inc. (the new name for Ventyx) filed a timely appeal to the Board on 6 November 2015.

## DISCUSSION

In this motion to dismiss, the Navy argues that, because the software license agreement[5] did not reference either of the contracts and was not incorporated into either contract, it did not "aris[e] under or relat[e] to" either contract as required for us to possess jurisdiction (gov't br. at 8-14). To support its argument the Navy argues that the "arise or relate to" language[6] is of more limited scope than a plain reading of its words would suggest, encompassing only direct breaches of a contract (*id.* at 8-10), and also argues that there is no "nexus" between the license agreement and the contracts as is supposedly required by the law (*id.* at 10-12). The first argument is not consistent with binding precedent; the second is belied by the uncontroverted facts.

I.     The Board Possesses Jurisdiction to Consider Issues with Some Relationship to the Terms or Performance of a Government Contract

The CDA confers jurisdiction upon the Board to consider appeals of decisions made by contracting officers "relative to a contract." 41 U.S.C. § 7105(e)(1)(A). Put another way, whether we possess jurisdiction over an appeal depends upon, "whether appellant's claim relates to a contract of the type covered by the CDA." *Ben M. White Co.*, ASBCA No. 39444, 90-3 BCA ¶ 23,115 at 116,045.

Similar language is used in the FAR's definition of "claim," which references a demand seeking relief "arising under or relating to the contract." *See Todd Construction, L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) (quoting 48 C.F.R. § 2.101). The scope of the "relating to" language in the definition of "claim" is dispositive to the motion before us. In *Todd Construction*, the Federal Circuit instructed that this phrase is to be read "broadly" in the context of CDA jurisdiction. 656 F.3d at 1312. In one case quoted with approval by the *Todd Construction* court, the Federal Circuit stated that, "[i]n general, 'related to' means one thing has some...connection to another thing." *Todd Construction*, 656 F.3d at 1312 (quoting *Tyco Healthcare Group LP v. Ethicon Endo-Surgery*, 587 F.3d 1375, 1378 (Fed. Cir. 2009)). Put yet another way, to be related to a contract, a claim "must have some relationship to the terms or performance

---

[5] Neither party has alleged that the license agreement is a CDA contract, and we need not decide that here.

[6] Although the CDA contains somewhat similar language, as discussed further below, the "arise or relate to" construction comes not from the CDA, but from the FAR-mandated disputes clause, FAR 52.212-4(d).

3

of [the] government contract." *Todd Construction*, 656 F.3d at 1312 (quoting *Applied Companies v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998)).

The Navy urges us to adopt a more constrained reading of the "arise or relate to" language, constructing "arise under" as involving matters that are embraced by the contract's "disputes" clause, and "relating to" meaning those disputes that are a straight breach of the contract (*see* gov't br. at 9-10). This, the Navy argues, is based upon the history of the CDA which was intended to end a previous bifurcation of the types of contract disputes that went to the Boards of Contract Appeals and the Federal courts respectively (*id.*). But this more limited construction of "relating to" is supported by no law and is contrary to the Federal Circuit's holdings in *Applied Companies* and *Todd Construction*, which we discussed above. Accordingly, we reject the Navy's proposed construction of the CDA, which would limit our jurisdiction to only those claims involving breaches of the terms of the contract or matters encompassed in the disputes clause.

## II.    The License Agreement was Related to the Performance of Contract 038

Having disposed of the Navy's overly-limited definition of "related to," it is easy enough to dismiss the Navy's suggestion that, since the license agreement was not incorporated into the contract by reference, there was no breach of contract and thus no CDA jurisdiction over this matter (gov't br. at 10-11): no such breach is necessary for our jurisdiction, as discussed above. Similarly, the Navy's argument that jurisdiction is lacking because the law supposedly requires a "nexus" between the contract and the license agreement (*id.*), is not particularly persuasive because the Navy cites no law requiring such a "nexus," though, as discussed below, there *is* a clear nexus (as we interpret that word) connecting the contract and the license agreement.

The facts, plainly recognized by the Navy contracting officer and other officials,[7] and which the Navy's motion never confronts, demonstrate clearly that the execution of the license agreement was part and parcel with the performance of the contract. The contract was for the acquisition of the software along with an associated license agreement. Indeed, the terms of the contract specified limitations on the license agreement and prohibited copy protection devices on the software, while recognizing that a license agreement could limit the number of such duplicates. Thus, the license agreement – which was necessary for the conveyance of the software to the Navy that was the entire point of contract 038 – was required by the contract and related to the performance of that contract. Put yet another way, the two documents were certainly "connected." *See Todd Construction*, 656 F.3d at 1312

---

[7] We agree with the Navy that neither the contracting officer nor any other government official, may confer jurisdiction to the Board when there is none (*see* gov't br. 12). *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (subject matter jurisdiction may never be forfeited or waived). Nevertheless, these officials may certainly admit facts that have a bearing upon jurisdiction. The relevant fact here is that there is some evidence the license agreement at issue was entered into as part of the performance of contract 038.

4

(quoting *Tyco Healthcare*, 587 F.3d at 1375). Accordingly, the evidence before us supports a finding that the dispute over the license agreement is "related to" contract 038, and we possess jurisdiction to consider this appeal.

## CONCLUSION

For the reasons set forth above, we deny the government's motion to dismiss.

Dated: 29 June 2016

J. REID PROUTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60314, Appeal of ABB Enterprise Software, Inc., f/k/a Ventyx, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

5